THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MICHAEL JOSEPH LANGFELT, Appellant.

First Department, May 26, 1964.

*George L. Santangelo* for appellant.

*Eric A. Seiff* of counsel (*H. Richard Uviller* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

McNALLY, J. Petitioner and two others were indicted February 20, 1928 on three counts: robbery in the first degree, assault in the first degree, and grand larceny in the first degree. The indictment arose out of an armed holdup in New York County on the night of January 28, 1928. Petitioner pleaded not guilty and proceeded to trial on March 26, 1928. On the trial petitioner was represented by counsel who in his opening said: "I was suddenly called into this case the other day. I knew very little about it. * * * It may develop * * * that the defendant is not mentally all there." The evidence, including petitioner's testimony, was completed the same day. Both sides rested. Petitioner's counsel waived summation.

On March 27, 1928 petitioner withdrew his not guilty plea and instead pleaded guilty to robbery in the second degree, while armed, to cover all pending indictments. After the change of plea the court stated: "I know that you [prosecutor] ordinarily would not have recommended robbery in the 2nd degree in this case, nor would I take it. I hesitated for a long time before taking it. However, I forgot one detail: Does the defendant admit his guilt? Not in this open confession — that stands — by counsel. I don't want this mental defective to come around and say that he pleaded guilty, but that he was forced to plead guilty. * * * while the defendant is probably a mental defective and therefore the punishment, on the filing of an information for the previous crime, would be substantial, and so long as it can be substantial there is no use in seeking for the jury's verdict."

Sentence was imposed April 3, 1928. Petitioner then denied he had pleaded guilty on March 27, 1928. His counsel and the trial court verified the contrary. Petitioner's denial of his prior plea was dealt with as a motion to withdraw his plea and denied.

Thereon the court observed: "the defendant, in spite of Dr. Lichtenstein's declaration, in my judgment is not normal, in the sense in my opinion he is a mental defective. His very conduct in Court, the entire proceedure [sic] indicates that."

Petitioner avers: "Approximately one month after sentence and committment [sic], petitioner was adjudged insane and transferred to Box A, Dannemora State Hospital for the criminally insane, and, where he remained until found sane in 1942 and recommitted to State Prison."

In the circumstances a hearing should be had as to petitioner's alleged insanity at the time of his said plea and during the time limited for his appeal from the judgment of conviction. (*People* v. *Jones,* 12 N Y 2d 1024; *People* v. *Sprague,* 11 N Y 2d 951; *People* v. *Boundy,* 10 N Y 2d 518; *People* v. *Hill,* 8 N Y 2d 935.)

The order should be reversed, on the law and on the facts, and the cause remanded for a hearing.

STEUER, J. (dissenting). I dissent. I do not believe that appellant has made out a case for a hearing. The hearing ordered is as to his mental condition at the time of sentence and during the period of one month thereafter, during which period he might have appealed. His proof in support is set out in the majority opinion and consists of two facts and his unsupported conclusions. The first fact is that the minutes of sentence reveal that the sentencing Judge believed defendant to be a mental defective. Though the Judge stated that this belief was contrary to the report of the examining physician, even if it be assumed that the Judge's belief was entirely correct, a mental defective is not legally insane and is subject to criminal process. And the Judge so held and acted upon that holding. The second fact is that one month after his imprisonment defendant was transferred to an institution for the criminally insane. Obviously this fact proves nothing. The transfer is not supported by any finding in the record of legal insanity at that time, nor, even if it were, would it establish such a condition dating back to the sentence. The shortness of the time, one month, is not even a reliable index in a person of impaired mental capacity, where fluctuation of condition is common. His unsupported conclusions raise no issue to controvert the certification of the physician designated to report on his condition.

Even if defendant's purported proof did raise an issue, the circumstances of this case should preclude the relief. The absence of authoritative rules, which is one of the characteristics of *coram nobis* proceedings, make discussion on a legal plane

difficult. Flexibility is often a requisite to alleviate injustice and this makes the formulation of rules no simple matter. The instant application points up at least two aspects where there is need for a rule.

First is a showing that there is necessity for the application. The appellant is not presently incarcerated and was released from prison over two years ago. He is not on probation or parole, and, in fact, his freedom of motion is in no way restricted. His attack on the validity of his conviction can therefore have only two objective purposes: to clear his record for personal or employment purposes, or to do the same in case of any conviction in the future. As to the first, the ineradicable fact remains that petitioner has spent 34 years continuously in penal and mental institutions. No hearing can wipe that out, nor can it ameliorate the pejorative effect it would have on his employment potential. As to the second, it is of no importance unless appellant contemplates the commission of further felonies. It is hardly to be expected that the processes of the court should be employed to ease his path in that eventuality. And when and if the validity of the conviction under attack becomes important as a prior conviction, it will then be time to consider it.

Secondly, the practicalities of the hearing ordered to be held should be considered. It is to be recalled that the inquiry ordered is as to defendant's mental condition 36 years ago. As far as is known, none of the persons who participated in his trial is alive today. The minutes of the trial were never transcribed and the stenographer who took them is dead. So are the sentencing Judge, the doctor who examined the defendant and certified as to his sanity, the District Attorney who conducted the prosecution, and defendant's three assigned counsel. A generation has passed, and all of these have passed with it. Furthermore, it is not even certain that the defendant himself is alive at this time. We have been informed that since the filing of the writ he has disappeared, and his present whereabouts are not known to anyone connected with the case. So, the court is placed in the position of ordering a hearing where there is nothing to be heard. But assuming that defendant has survived, the substantial lapse of time has effectively silenced every voice that the People could have brought to contradict him. And this is not a situation where either the opportunity or the information necessary to make a timely application was lacking during any part of this period.

It is true that neither incarceration nor restraint is a condition of a *coram nobis* application (*United States* v. *Morgan,*

346 U. S. 502). Whatever the original purpose of the writ *, it is clear that in this State it has become a catch-all remedy designed to cure injustices in criminal procedure where, through lapse of time or jurisdictional impediments, other remedies are not available. And if its use were limited to defendants under penal restraint, some other remedy would be required (*Mooney* v. *Holohan,* 294 U. S. 103). So there is no purpose in limiting this remedy. But this is not to say that whether the defendant is at liberty or under restraint is of no moment. If he is under restraint, the necessity is apparent; if not, the necessity should be set out, and, absent such a showing, the writ dismissed. Concededly, there is no statute or case law to this effect. And if a mere desire to expunge the record of conviction constitutes necessity (as has been held in a County Court decision, *People* v. *Shields,* 38 Misc 2d 279), it could be shown in every case, even those where the defendant is dead. I submit that the naked wish is not sufficient.

Also, it must be conceded that there is no Statute of Limitations and it would not be a simple matter to frame one that would justly embrace all situations. But where, as here, the time period is extensive and has the practical effect of rendering any hearing a mere *pro forma* ceremony or one where the allegations can no longer be susceptible of convincing proof or disproof, in the absence of good reasons for the delay some time limit is called for. This is neither an extreme nor an isolated case. Applications of this age, while not common, are not rare, and there have been applications to upset convictions obtained 50 and 60 years before the application. Some limitation is called for. And the public interest should control where no substantial excuse for the delay is shown.

For all of these reasons the order dismissing the writ without a hearing should be affirmed.

BREITEL, J. P., STEVENS and EAGER, JJ., concur with McNALLY, J.; STEUER, J., dissents in opinion.

Order, entered on October 13, 1961, reversed, on the law and on the facts, and the matter remanded to the Supreme Court, New York County, for a hearing.

---

* The writ was originally used in civil cases to correct certain errors in the record after the expiration of the Trial Term. See quotation from Fitz-Herbert in Frank, Coram Nobis, p. 2. I believe that its use in criminal cases arose where the defendant sought to contest on the facts after his demurrer on the law has been overruled. (See *Roy* v. *Cornwall,* 82 Eng. Rep. 1060, a case decided in 1667.) Without court permission, defendant apparently was precluded.