**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 18 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

DANIEL EVANS ADAMS,

      Petitioner-Appellant,

v.

TIM LEMASTER, Warden;
ATTORNEY GENERAL FOR THE
STATE OF NEW MEXICO,

      Respondents-Appellees.

No. 99-2348

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CIV 97-1017)**

---

Richard A. Winterbottom, Assistant Federal Public Defender, Albuquerque, New Mexico, for Petitioner-Appellant.

Anthony Tupler (Patricia A. Madrid, Attorney General, with him on the brief), Assistant Attorney General, Santa Fe, New Mexico, for Respondents-Appellees.

---

Before **TACHA, BALDOCK** and **BRORBY**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

---

      This appeal involves the proper application of the tolling provision of the

one-year statute of limitations for habeas corpus petitions under the Antiterrorism and Effective Death Penalty Act of 1996. Specifically, we must determine if the prison mailbox rule, as articulated in *Houston v. Lack*, 487 U.S. 266 (1988), applies to prisoners requesting state post-conviction relief in New Mexico. We hold the rule does not apply, and affirm the dismissal of this habeas corpus petition as time-barred.

## BACKGROUND

This habeas petition is before us a second time. *See Adams v. LeMaster*, 172 F. 3d 62, 1999 WL 80381 (10th Cir. Feb. 17, 1999) (unpublished decision). Because we issued our initial disposition through an unpublished order and judgment, we will repeat the relevant facts here, borrowing generously from our earlier work.[1]

Following a bench trial, the trial judge found Mr. Adams guilty of first degree kidnaping, second degree criminal sexual penetration and attempted second degree murder. Mr. Adams' conviction became final after the New Mexico Supreme Court denied his petition for writ of certiorari in January 1988.

---

[1] We also note the State largely does not dispute Mr. Adams' recitation of the facts in his brief.

Later that same year, a state district court denied Mr. Adams' first state habeas petition. Mr. Adams filed a second state habeas petition in April 1997, the timing of which creates the dispute underlying this case.

Mr. Adams, acting *pro se*, mailed the petition to the state district court on April 12, 1997. While Mr. Adams claims the district court received the petition by April 16, the clerk of court file-stamped the petition April 22, 1997. The district court dismissed the second state petition with prejudice, and the New Mexico Supreme Court denied Mr. Adams' petition for certiorari on July 21, 1997. Pursuant to 28 U.S.C. § 2254, Mr. Adams then mailed his *pro se* federal habeas petition to the United States District Court for the District of New Mexico on July 30, and the clerk file-stamped the petition August 1, 1997. Adopting a magistrate judge's recommendation, the district court dismissed Mr. Adams' petition as untimely. In doing so, neither the district court nor the magistrate judge addressed Mr. Adams' contention that pursuant to *Houston v. Lack*, his second state petition was "filed" when he placed the petition in the mail. Adopting this argument would toll the federal statute of limitations long enough to make Mr. Adams' federal habeas petition timely. We granted a certificate of appealability, vacated the district court's order, and remanded for a determination of this issue. On remand, the district court held *Houston v. Lack* did not apply in

this case, and again found Mr. Adams' federal petition untimely. We granted a certificate of appealability on this issue, and appointed counsel for Mr. Adams for the purposes of this appeal.

## DISCUSSION

Because the question presented here is a legal one, our review is de novo. *See Rogers v. Gibson*, 173 F.3d 1278, 1282 (10th Cir. 1999), *cert. denied*, 120 S. Ct. 944 (2000). As an initial matter, we must determine if we have jurisdiction over this appeal. Appellate review of the dismissal of a habeas petition is controlled by 28 U.S.C. § 2253, which requires the issuance of a certificate of appealability before an appeal can proceed in our court. *See* 28 U.S.C. § 2253(c)(1)(A). "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As mentioned earlier, we granted a certificate of appealability on the issue of the timeliness of Mr. Adams' federal petition. However,

> [w]hen the district court denies a habeas petition on procedural
> grounds without reaching the prisoner's underlying constitutional
> claim, a [certificate of appealability] should issue when the prisoner
> shows, at least, that jurists of reason would find it debatable whether
> the petition states a valid claim of the denial of a constitutional right
> and that jurists of reason would find it debatable whether the district
> court was correct in its procedural ruling.

*Slack v. McDaniel*, ___ U.S. ___. ___. 120 S. Ct. 1595, 1604 (2000). Therefore,

-4-

the determination of whether a certificate of appealability should issue in this case must have "two components, one directed at the underlying constitutional claims and one directed at the district court's procedural holding." *Id.* Because the district court did not reach the merits of Mr. Adams' petition, and our certificate of appealiability is confined to the procedural issue of timeliness, we must examine Mr. Adams' underlying constitutional claims. After reviewing the claims and the record on appeal, we hold "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and grant a certificate of appealability as to Mr. Adams' claim that sentencing him on both the kidnaping and criminal sexual penetration convictions violated the double jeopardy clause.[2] Having determined Mr. Adams meets this threshold standard, we turn to the timeliness of his federal habeas petition.

---

[2] Mr. Adams raises several claims of constitutional violations, including: (1) an unintelligent and involuntary waiver of his right to trial by jury; (2) ineffective assistance of counsel; (3) insufficiency of the evidence; (4) violation of the double jeopardy clause because the kidnaping and criminal sexual penetration charges resulted from the same unified facts; (5) prosecutorial misconduct; and (6) violation of the due process clause because an expert witness was allowed to vouch for the victim's truthfulness and impermissibly infringe on the province of the jury. In its brief, the State concedes Mr. Adams makes an adequate showing to warrant the issuance of a certificate of appealability. Because the issue was conceded, and because we ultimately dispose of this appeal on the procedural issue of timeliness, we find it unnecessary to further develop our analysis of Mr. Adams' underlying constitutional claims.

The Antiterrorism and Effective Death Penalty Act of 1996 includes a one-year statute of limitations for state prisoners to file an application for a writ of habeas corpus. *See* 28 U.S.C. § 2244(d)(1). Because Mr. Adams' state convictions became final in 1988, well before the passage of the Antiterrorism and Effective Death Penalty Act, he had one year from the enactment of the Act to seek federal habeas relief. *See Barnett v. LeMaster*, 167 F.3d 1321, 1322 (10th Cir. 1999); *Miller v. Marr*, 141 F.3d 976, 977 (10th Cir.) (citing *United States v. Simmonds*, 111 F.3d 737, 746 (10th Cir. 1997)), *cert. denied*, 525 U.S. 891 (1998). Therefore, Mr. Adams was required to file his application prior to April 24, 1997 in order to beat the statute of limitations. *Miller*, 141 F.3d at 977. However, the limitations period is tolled during the pendency of state post-conviction review: "The time during which a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). The question presented here is how do we determine when a state petition for post-conviction relief is "properly filed"?

The parties agree Mr. Adams' period of limitation was tolled from the time he filed his second state petition until July 21, 1997, when the New Mexico

Supreme Court denied certiorari. *See Barnett*, 167 F.3d at 1323. Nor do the parties dispute Mr. Adams "filed" his federal petition on July 30, 1997, when he placed the petition in the care of prison officials via the prison mail system. *See Hoggro v. Boone*, 150 F.3d 1223, 1226 n.3 (10th Cir. 1998) (citing *Houston*, 487 U.S. at 270). Thus, nine days elapsed from the end of the tolling period until Mr. Adams filed his federal petition. If we determine Mr. Adams filed his state petition when he mailed it on April 12, 1997, as is done for federal petitions, the tolling period commenced eleven days prior to the April 23, 1997 statute of limitations deadline. Therefore, Mr. Adams had eleven days from the end of the tolling period, or until August 1, 1997, to file his federal petition, and his petition filed July 30, 1997 was timely. However, if we determine Mr. Adams' state petition was filed when allegedly received by the district court clerk on April 16, 1997, or when file-stamped on April 22, 1997, Mr. Adams had from one to seven days after the tolling period, or until July 28 at the latest, to file his federal petition. Thus, his federal petition filed July 30, 1997 would be untimely.

On remand, we asked the district court to determine if "the mailbox rule of *Houston v. Lack* applies, for purposes of § 2244(d)(2) tolling, to filings of state habeas petitions." *See Adams*, 1999 WL 80381, at *3. The district court referred the question to a magistrate judge, who issued a recommended disposition which

the district court subsequently adopted.  Unfortunately, the magistrate and the district court answered an ancillary question to the one we posed, focusing instead solely on whether the New Mexico courts apply the mailbox rule to state habeas petitions.  On appeal, Mr. Adams correctly points out the district court skipped an important step in its analysis.  Before turning to an interpretation of state law, the district court should have determined if federal procedural law supplies the definition of a "properly filed" state petition for purposes of § 2244(d)(2).  We undertake that analysis now and hold federal law does not apply.

Congress did not provide guidance on the meaning of a "properly filed application" under § 2244(d)(2).  *See Habteselassie v. Novak*, 209 F.3d 1208, 1210 (10th Cir. 2000); *see also Villegas v. Johnson*, 184 F.3d 467, 470 (5th Cir. 1999) (relying on legislative history and plain meaning of § 2244(d)(2)).  However, we have clearly held, as has every one of our sister circuits, that state procedural law must govern when determining whether a state petition is "properly filed."  "We believe that a 'properly filed' application is one filed according to the filing requirements for a motion for state post-conviction relief.  These requirements may include:  (1) the place and time of filing ...."  *Habteselassie*, 209 F.3d at 1210-11; *see also Freeman v. Page*, 208 F.3d 572, 576 (7th Cir. 2000); *Webster v. Moore*, 199 F.3d 1256, 1258-59 (11th Cir. 2000) (per

curiam); *Dictado v. Ducharme*, 189 F.3d 889, 892 (9th Cir. 1999); *Villegas*, 184 F.3d at 470 & n.2; *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir. 1998). More directly on point, in *Hoggro* we did not count for tolling purposes the time spent on an appeal the Oklahoma Court of Criminal Appeals dismissed as untimely. *See Hoggro*, 150 F.3d at 1225, 1226 n.4. We recognize determining *whether* a petition is properly filed is slightly different than determining *when* that petition is properly filed. However, in this instance we find it a distinction without a difference. Thus, while not fully discussing the issue before us, we nonetheless find *Habtesalassie* and *Hoggro* dispositive. Based on these cases and the sound reasoning in other circuits that have addressed this issue, we hold the federal mailbox rule announced in *Houston v. Lack* does not apply to § 2244(d)(2) for purposes of determining when the tolling period for a properly-filed state petition begins. *Accord Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999), *cert. denied*, 120 S. Ct. 1564 (2000); *Webster*, 199 F.3d at 1258-59. As the Eleventh Circuit concluded, this holding comports with "[t]he plain language of § 2244(d)(2)" and with "the high degree of respect" and "deference" the Antiterrorism Effective Death Penalty Act affords state courts. *Webster*, 199 F.3d at 1258-59. Based on the plain language of § 2244(d)(2), and in the interest of comity and due deference, we too hold state law must determine when a state habeas petition is considered filed.

Mr. Adams disagrees, stating § 2244(d)(2) focuses on the timeliness of the filing of later federal petitions in federal courts, and therefore federal courts should apply federal procedural law to determine when the state petition is filed for purposes of § 2244. This reasoning could lead to an obvious absurdity in the many states with filing deadlines for state petitions – a state court determination that a state petition was untimely, and the federal courts tolling the federal statute of limitations for the same petition because it was "properly filed." This approach contravenes common sense, the clear language of the statute, and our precedent.[3] Therefore, we necessarily turn, as did the district court, to New Mexico law to determine when Mr. Adams properly filed his state petition.[4]

Having conducted a futile search of New Mexico law for references to when a state habeas petition is deemed "properly filed," we must endeavor to predict what the New Mexico Supreme Court would do if faced with the question.

---

[3] Admittedly, as both parties suggest, in New Mexico no deadline for filing a state petition exists, so this absurd result will not arise under the circumstances presented. Nevertheless, we see no justification for deferring to some state timeliness decisions and not others. As a matter of federal law, we look to state law to determine when and whether a state petition was properly filed.

[4] We note the Supreme Court did not base its decision in *Houston* on constitutional principles, but instead based it on the interpretation of federal statutes and rules of procedure. *See Houston*, 487 U.S. at 277 (Scalia, J., dissenting). As such, state courts are not bound by the decision.

*See Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574-75 (10th Cir. 1984).

We begin by pointing out post-conviction habeas petitions in New Mexico state courts are not characterized as civil actions, but instead are governed by the New Mexico Rules of Criminal Procedure. *See Caristo v. Sullivan*, 818 P.2d 401, 406-07 (N.M. 1991). Therefore, we look to the relevant rules of criminal procedure for guidance on when a petition is "filed." The rule governing habeas corpus petitions states "[a] writ of habeas corpus will be issued only upon filing with the clerk of the court a petition on behalf of the party seeking the writ." N.M. R. Crim. P. 5-802B. Should the district court deny the writ, "a petition for certiorari may be filed with the Supreme Court" within thirty days of the district court's decision. N.M. R. Crim. P. 5-802G(2). Still another provision defines "filing with the court" as "filing [pleadings and other papers] with the clerk of the court, except that the judge may permit the papers to be filed with the judge, in which event the judge shall note thereon the filing date and forthwith transmit them to the office of the clerk." N.M. R. Crim. P. 5-103D. The rules also permit filing by facsimile, and state "[f]or any questions of timeliness the time and date affixed on the cover page by the court's facsimile machine will be determinative." N.M. R. Crim. P. 5-103.1F.

While New Mexico courts have vacillated somewhat in their approach to

statutory construction, we are convinced the "plain meaning" rule applies to the current situation because the New Mexico statutes at issue are clear and unambiguous. *See State v. Gallegos*, 871 P.2d 1352, 1353, 1357-58 (N.M. 1994) (the court traced two lines of cases, one embracing the "plain meaning" rule, and another demonstrating "a willingness to depart from the literal wording of a statute." While taking the latter approach in *Gallegos*, the court was careful not to repudiate the "plain meaning" rule when "the meaning of a statute is truly clear."). Applying the "plain meaning" rule to the statutes in issue, it is clear "filing with the clerk of court" means just what it says. Interpreting the phrase to mean "placed in the mail" requires a level of textual construction by judicial fiat we find unacceptable.

We are convinced New Mexico's rules require, at the very least, receipt by the clerk before a petition is filed. We find support for this position in the clear language of the rules themselves. In addition to the state statutory text quoted earlier, we note in habeas cases once a petitioner "files" a petition for certiorari with the New Mexico Supreme Court, the petition is deemed denied if "certiorari is not granted by the Supreme Court within thirty (30) days after filing." N.M. R. Crim. P. 5-802G (3). While we are unable to find any case law on point, it strains credulity to argue the thirty-day period begins running prior to the petition's

arrival at the New Mexico Supreme Court. We also find support in the related state rules of appellate procedure, which specifically refer to filing by mail: "Filing by mail is not complete until actual receipt." N.M. R. App. P. 12-307A. The plain meaning of these rules does not support adoption of the mailbox rule.

Mr. Adams responds by pointing out the language of the rules interpreted by the United States Supreme Court in developing the prison mailbox rule in *Houston* are very similar to the New Mexico procedural rules quoted above. While we agree the rules are similar, this is not necessarily determinative. As we noted earlier, the *Houston* decision is not binding on state courts. In fact, as Mr. Adams acknowledges, not all the states to consider the propriety of the mailbox rule have agreed with the Supreme Court's approach. *See State v. Parker*, 936 P.2d 1118, 1121 n.4 (Utah Ct. App. 1997) (examining state split). Each state court must look at its own statutory structure and rules of interpretation in answering this question. We hold the New Mexico Supreme Court would side with those state courts relying on the plain meaning of their respective state procedural rules to reject the prison mailbox rule.

We also point out the policy justifications for *Houston* are lacking in this case. An undercurrent throughout Mr. Adams' brief and argument is a staunch

defense of the policy arguments supporting the prison mailbox rule. Justice

Brennan, writing for the Court in *Houston*, skillfully laid out these arguments.

Most notably, unlike other litigants, a *pro se* prisoner does not have the ability to

monitor the processing of his appeal to ensure it is filed in a timely manner.

*Houston*, 487 U.S. at 270-71.

> Worse, the *pro se* prisoner has no choice but to entrust the
> forwarding of his notice of appeal to prison authorities whom he
> cannot control or supervise and who may have every incentive to
> delay. No matter how far in advance the pro se prisoner delivers his
> notice to the prison authorities, he can never be sure that it will
> ultimately get stamped "filed" on time.

*Id.* at 271. We do not quarrel with the propriety of the mailbox rule as a solution

to the unique problems of a *pro se* prisoner confronted with a rapidly-approaching

filing deadline. Even the strong dissent in *Houston* stated the rule "makes a good

deal of sense." *Id.* at 277 (Scalia, J., dissenting). However, at the risk of stating

the obvious, the policy reasons in support of the rule are only relevant when a

deadline exists. As previously indicated, New Mexico places no time limits on

filing a state habeas petition. Therefore, the policy arguments at the core of

*Houston* are inapplicable to prisoners in New Mexico filing state habeas petitions.


Mr. Adams attempts to circumvent this dilemma by stating the New Mexico

Supreme Court would apply the mailbox rule to state habeas petitions if given the

opportunity.[5] But the question facing us today is not whether the New Mexico court would adopt the mailbox rule given the same policy choices dealt with in *Houston*. Instead, the question we must answer is: under the state rules of criminal procedure and given the facts of Mr. Adams' case, when would the New Mexico court determine his petition was filed? Applying the pertinent state statutes, we hold the New Mexico Supreme would look to one of two dates to answer this question: the date the clerk of court received the petition; or the date the clerk of court file-stamped the petition. Giving Mr. Adams the benefit of the doubt, his state petition was "properly filed" when the clerk allegedly advised him of receipt of his application on April 16, 1997. This was seven days prior to the expiration of his one-year statute of limitations for filing his federal petition. Because Mr. Adams filed his federal petition nine days, instead of seven days, after the tolling period ended, the district court correctly dismissed the petition as untimely. [6]

---

[5] Mr. Adams also points out the New Mexico Supreme Court prefers to reach the merits of each case. Our decision does not run counter to that preference considering there is no filing deadline for state habeas petitions in New Mexico. The New Mexico Court need not adopt the mailbox rule in order to reach the merits of any petition.

[6] As stated earlier, Mr. Adams' state petition tolled the one-year statute of limitations period until July 21, 1997. Adding the additional seven days to July 21, 1997, Mr. Adams' federal habeas petition became due on July 28, 1997. His federal petition was untimely because he did not file until July 30, 1997.

Finally, Mr. Adams cites *Lonchar v. Thomas*, 517 U.S. 314, 324 (1996), to make the point "[d]ismissal of a *first* federal habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty" (emphasis in original), and directs us to a New Mexico case, *State v. Aaron*, 703 P.2d 915 (N.M. Ct. App. 1985), where the court acted in equity to deem an untimely notice of appeal timely because a court clerk practiced a policy of not expeditiously date-stamping *pro se* pleadings. As the State points out, this is essentially an equitable tolling argument. While Mr. Adams did not specifically raise this issue on appeal, we will cursorily dispose of it. The § 2244(d) limits are subject to equitable tolling when an inmate diligently pursues his claims. *See Miller*, 141 F.3d at 978. Suffice it to say, we agree with the district court's conclusion Mr. Adams' nearly ten-year hiatus from pursuit of his federal petition and his repetitive second state petition filed days before expiration of the applicable federal statute of limitations does not demonstrate the requisite diligence to justify equitable tolling. *See id*.

Because Mr. Adams did not timely file his federal petition, we need not address the merits of his constitutional claim of double jeopardy for which we granted a certificate of appealability. Accordingly, while we grant a certificate of

-16-

appealability on Mr. Adams' underlying double jeopardy claim, we nevertheless

**AFFIRM** the district court's dismissal of his § 2254 petition as untimely.