Pablo FERNANDEZ, Petitioner,

v.

Christopher ARTUZ, et
al., Respondents.

No. 00CIV7601(KMW)(AJP).

United States District Court,
S.D. New York.

Nov. 20, 2001.

## AMENDED ORDER AND OPINION

KIMBA M. WOOD, District Judge.

*Pro se* petitioner seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his state court conviction for second degree murder. Respondents filed a motion to dismiss the petition as untimely. In a Report and Recommendation ("Report") dated May 15, 2001, Magistrate Judge Andrew J. Peck recommended that the Court deem the petition time-barred and grant the motion to dismiss. Both petitioner and respondents have filed objections to the Report. For the reasons set forth below, the Court denies the motion to dismiss.

### I. Discussion

The timeliness of this federal habeas petition depends upon when a state habeas petition is deemed "properly filed" under the tolling provisions of 28 U.S.C. § 2244(d)(2). As explained in the Report, familiarity with which is assumed, petitioner handed a state habeas petition to prison officials for mailing on September 15, 1999. *See* Report at 2–3. The petition was not received by the state court until September 27, 1999, due to both a delay in mailing that resulted from the prison officials' mistaken belief that petitioner lacked the money to cover postage, and the normal delay entailed in sending mail from the prison to the state court. *See* Report at 3; Petitioner's Affidavit, dated May 11, 2001. The present petition is timely if the state habeas petition is deemed properly filed on September 15, 1999, the date on which petitioner handed his state petition to the prison officials. The present petition is ten days too late if the state habeas petition is deemed filed on September 27, 2001, the date on which the state court received the petition. *See* Report at 6–7.

 The Antiterrorism and Effective Death Penalty Act (AEDPA) established a one-year statute of limitations for habeas corpus petitions filed after April 24, 1996. *See* 28 U.S.C. § 2244(d)(1)-(2). The limitations period runs from the date on which the underlying criminal judgment becomes final by the conclusion of direct review, excluding time during which any "properly filed" application for state collateral review is pending. *See Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000). The timeliness of the present petition depends upon the proper calculation of the amount of time that should be tolled. Under federal procedural law, a federal habeas petition is deemed "properly filed" when the prisoner delivers the petition to a prison official for mailing. *See Noble v. Kelly,* 246 F.3d 93, 97–98 (2d Cir.2001). Were this rule, known as the prison mailbox rule, to govern the determination of when the state petition was "properly filed," the present petition would be timely. Were New York state procedural law to govern, the petition would be untimely because New York law does not deem an application filed until it is received by the state court. *See Grant v. Senkowski,* 95 N.Y.2d 605, 608–09, 721 N.Y.S.2d 597, 599, 744 N.E.2d 132 (2001).

 In an unreported opinion, the Second Circuit used the prison mailbox rule to calculate the tolling of the one-year grace period provided in § 2254(d)(2)-the statute of limitations available to those prisoners convicted before AEDPA's enactment. *See Milbank v. Senkowski,* No. 98–2958, 2000 WL 1459030, *2, 229 F.3d 1135 (2d Cir. Sept. 29, 2000) (district court erred when it failed to toll AEDPA's one-year grace period starting at date state prisoner handed state habeas petition to prison official). Pursuant to the rules of this Circuit, an unreported opinion does not constitute binding authority. *See* 2d Cir. R., § 0.23 (2001). However, for the reasons discussed below, including this Circuit's consistent application of the mailbox rule to various filings by state prisoners,[1] and *Milbank's* indication of the direction of the Circuit on the instant issue, the Court applies the prison mailbox rule to petitioner's state court petition for purposes of tolling AEDPA's one-year statute of limitations.

In the absence of any congressional guidance for interpreting "properly filed," circuit courts have struggled to find a rationale for choosing between the federal prison mailbox rule and state procedural rules to determine the date of filing.[2] The

1. The Second Circuit has consistently applied the federal prison mailbox rule to papers filed by state prisoners initiating other federal actions. *See Noble,* 246 F.3d at 97 (applying the prison mailbox rule to federal habeas petition filed by state prisoner); *Nelson v. Walker,* 121 F.3d 828, 832 n. 2 (2d Cir.1997) (date of delivery of notice of appeal to state prison officials is the relevant date for purposes of determining whether it was filed before the enactment of AEDPA); *Dory v. Ryan,* 999 F.2d 679, 682 (2d Cir.1993), *modified on other grounds on reh'g,* 25 F.3d 81 (1994)(applying the prison mailbox rule to Section 1983 complaints filed by state prisoners).

2. The Circuits are split on this issue and the Supreme Court has not yet considered it. In November 2000 Justice Antonin Scalia, writ-

ing for the Court, considered the effect of various state procedural bars on section 2254 petitions and held that a petitioner's application can meet the "properly filed" requirement of § 2244(d)(2)even if the *claims* it sets forth are procedurally barred by state law. *See Artuz v. Bennett,* 531 U.S. 4, 121 S.Ct. 361, 364, 148 L.Ed.2d 213 (2000) (emphasis added). The Court's rationale was that "in common usage, the question whether an application has been 'properly filed' is quite separate from the question whether the *claims contained in the application* are meritorious and free of procedural bar." *Id.* at 364. This holding sheds no light on how the Court would address the prison mailbox issue presented here. However, in the context of distinguishing compliance with *filing* procedures from compliance with law governing

Ninth Circuit, in choosing the federal rule, adopted the Supreme Court's reasoning in *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), in which the Court held that the prisoner mailbox rule applied to notices of appeal filed pursuant to federal appellate rules. The Supreme Court opted for the interpretation that favored the pro se prisoner (who is powerless to control the time of delivery of documents to the court). The Ninth Circuit reasoned that the same interpretation should be given to AEDPA's tolling provision because the same conditions that led to the adoption of the mailbox rule are present whether the application at issue was filed in federal court or in state court. *See Saffold v. Newland*, 250 F.3d 1262, 1268 (9th Cir.2000); *Anthony v. Cambra*, 236 F.3d 568, 575 (9th Cir.2000).[3]

In contrast, the Fifth, Tenth, and Eleventh Circuits have relied on one or another combinations of: (1) assertions that the "plain meaning" of the words "properly filed" is "filed under state law"; (2) reference to the importance of showing respect for and deference to state courts generally and the fact that AEDPA in particular reflects Congress' intent to defer to state courts in some respects; and (3) the fact that the opposite result could lead to the "absurdity" that an application deemed untimely by the state court could be deemed "properly filed" for federal tolling purposes. *See Adams v. LeMaster*, 223 F.3d 1177, 1181–82 (10th Cir.2000); *Webster v. Moore*, 199 F.3d 1256, 1258–59 (11th Cir. 2000); *Coleman v. Johnson*, 184 F.3d 398, 401–02 (5th Cir.1999). The Court considers these points in turn.

First, as a matter of statutory construction, the words "properly filed" do not, in and of themselves, have a "plain meaning" that gives any indication of whether Congress intended for the federal prison mailbox rule to apply in determining the date of filing a state application, for purposes of calculating the § 2244 filing period. For example, it is precisely because federal statutes are often unclear as to how to determine *whether* a paper has been "received" that the federal mailbox rule developed as a standard evidentiary presumption under the federal common law. *See Anderson v. United States*, 966 F.2d 487 (9th Cir.1992) (applying the federal mailbox rule—that a postmark showing timely mailing of a document raises a rebuttable presumption that it was received—in determining that plaintiff's tax return was "received" by IRS); *Schikore v. BankAmerica Supp. Ret. Plan*, 269 F.3d 956 (9th Cir.2001) (applying the federal mailbox rule as a rebuttable presump-

---

the *content* of applications, the Court stated *in dictum* that state law would govern whether an application's "delivery and acceptance" are in compliance with "the applicable laws and rules," including state rules on when a filing has been delivered timely to the appropriate court officer to be placed in the record. *Id.* at 364. The Report in the instant case relied upon this language in deciding that petitioner's filing was untimely. However, this dictum in *Bennett* echos language from Justice Scalia's own dissent from the Court's adoption of the "prison mailbox rule" twelve years earlier in *Houston v. Lack*, 487 U.S. 266, 277, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), and does not necessarily reflect that the Court has rejected the rule for AEDPA's tolling purposes. The holding in *Houston*, and the prison mailbox rule itself, are solid features of AEDPA jurisprudence.

3. The Eight Circuit employed similar reasoning in *Nichols v. Bowersox*, 172 F.3d 1068 (8th Cir.1999), in which that court applied the mailbox rule to the filing of a state prisoner's *federal* habeas petition in federal district court. The *Nichols* panel observed that "the Supreme Court's reasoning in *Houston v. Lack* applies with virtually equal force to the issue" of whether the mailbox rule applies to federal habeas petitions filed by state prisoners. *Id.* at 1075.

tion in determining that insurer had "actually received" an ERISA form). In the context of litigation initiated by *pro se* petitioners, the prison mailbox rule functions as a rule of construction to determine *when* a court paper was "filed," and is used regularly to calculate running and tolling of federal statutes of limitations found in statutes governing direct appeals, Section 1983 actions, and Federal Tort Claims Act actions. *See Garvey v. Vaughn*, 993 F.2d 776 (11th Cir.1993) (holding that the prison mailbox rule announced in *Houston* applies to *pro se* prisoners in state facility filing complaints under Section 1983 and under the Federal Tort Claims Act); *Dory v. Ryan*, 999 F.2d 679 (2d Cir.1993), *modified on other grounds on reh'g*, 25 F.3d 81 (2d Cir.1994)(applying the prison mailbox rule to Section 1983 complaints filed by state prisoners); *Lewis v. Richmond City Police Dep't*, 947 F.2d 733 (4th Cir.1991) (same); *Burrell v. Newsome*, 883 F.2d 416 (5th Cir.1989) (same). In these statutory schemes, as in AEDPA, the "plain language" of the relevant statutes is unhelpful in determining *when* court papers are considered "filed."

■ Second, respect for state courts is not affected one way or another by the interpretation of the word "filed" in a federal tolling provision; nothing in that interpretation affects the deference due to state courts (or state policies reflected in legislative enactments). Under the federal habeas scheme, state habeas proceedings are necessarily completed by the time a state prisoner files a federal habeas petition. *See* 28 U.S.C. § 2254(b)(1)(A) (requiring that habeas applicant "exhaust[ ] the remedies available in courts of the State"). The district court's determination of whether the state habeas petition was "properly filed" in state court for purposes of calculating tolling a federal statute of limitations does not, and cannot, affect the state court proceeding. The calculation of a federal statute of limitations bears on the federal court proceedings only.

■ Third, although some may see an advantage to having the date that a state application is deemed "filed" be the same for federal purposes as it is for state purposes, this advantage has little practical significance. Militating in the opposite direction, those concerned with symmetry could just as easily focus on uniformity, among all habeas filers, of the event constituting "filing" for all federal tolling purposes. Concern for uniformity of interpretation and application of federal statutes has led federal courts to use federal interpretative rules when applying federal statutes of limitations. *See, e.g., Felder v. Casey*, 487 U.S. 131, 138, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) (even where state statute of limitations applies to a federal cause of action, *state* court may not apply the related state law notice-of-claim provision). Uniform calculation of AEDPA's tolling provision as it applies to state filings would standardize the procedures that govern how inmates assert their federal rights, regardless of whether they are in federal or state prison, and regardless of their state of incarceration.

More important is the Supreme Court's recognition, eight years before AEDPA was enacted, of the interests of justice, including judicial economy, served by the mailbox rule. *See Houston*, 487 U.S. at 274–275. Although the Tenth Circuit found it "absurd" for an application that the state court deems untimely to be deemed "properly filed" for federal tolling purposes, *Adams*, 223 F.3d at 1181 n. 3, that "absurdity" diminishes when one takes into account the different concerns that underlie the rules adopted in some states and by federal courts. Federal courts have shown particular concern for prisoners whose applications are delayed by factors they are helpless to control-a

reality the Supreme Court recognized in *Houston:*

> The situation of [*pro se* ] prisoners ... is unique. Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal to ensure that the court clerk receives and stamps their notices of appeal before [expiry of the deadline]. Unlike other litigants, *pro se* prisoners cannot personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court received the notice.

*Houston,* 487 U.S. at 270–71, 108 S.Ct. 2379. Additionally, using the prison mailbox rule to calculate tolling of AEDPA's statute of limitations simplifies and clarifies the process. As the Supreme Court explained in *Houston:*

> The *pro se* prisoner does not anonymously drop his notice of appeal in a public mailbox-he hands it over to prison authorities who have well-developed procedures for recording the date and time at which they receive papers for mailing and who can readily dispute a prisoner's assertion that he delivered the paper on a different date.... [M]aking filing turn on the date the *pro se* prisoner delivers the notice to prison authorities is a bright-line rule, not an uncertain one. Relying on the date of receipt, by contrast, raises such difficult to resolve question as whether delays by the United States Postal Service constituted excusable neglect and whether a notice stamped "filed" on one day was actually received earlier.

*Houston,* 487 U.S. at 275, 108 S.Ct. 2379. The prison mailbox rule lends the same administrative efficiency to ascertaining when a state petition was "properly filed" in state court for purposes of AEDPA tolling.

This Court adopts the interpretation that gives similarly situated petitioners the benefit of having the same event (a prisoner's handing an application to a prison official for mailing) commence the federal (AEDPA) tolling period. Use of the prison mailbox rule furthers both the federal interest in uniformity of application of federal law, and the interests cited by the Supreme Court when it adopted the prison mailbox rule. Moreover, an unreported opinion of this Circuit indicates that the prison mailbox rule applies to state filings when calculating tolling of AEDPA's statute of limitations. *See Milbank,* 2000 WL 1459030, 229 F.3d 1135 (2d Cir. Sept. 29, 2000). For all these reasons, the Court determines that the federal mailbox rule applies to petitioner's filing of his state habeas petition for the purpose of the calculation of the tolling of time under § 2244(d)(2).

## II. Conclusion

For the reasons set forth above, the Court deems the petition timely and denies respondent's motion to dismiss. Respondent must answer the petition or otherwise move by December 10, 2001.

28 U.S.C § 1292(b) provides that "if the Court is of the opinion that an order that is otherwise not appealable" to the circuit court (1) "involves a controlling question of law as to which there is substantial ground for difference of opinion," and (2) "that an immediate appeal from the order may materially advance the ultimate termination of the litigation," the District Court judge "shall so state in writing in such order." 28 U.S.C. § 1292(b). This Opinion and Order satisfies these criteria, and thus an interlocutory appeal is warranted.

SO ORDERED.