Pablo **FERNANDEZ**, Petitioner–
**Appellee**,

v.

Christopher **ARTUZ**, Respondent–
**Appellant**.

Docket No. 03—2541.

United States Court of Appeals,
Second Circuit.

Argued: Oct. 20, 2004.

Decided: March 17, 2005.

Morrie I. Kleinbart, Assistant District Attorney, New York County, (Robert M.

Morgenthau, District Attorney, Nicole Beder, Assistant District Attorney, on the brief) New York, NY, for Respondent–Appellant.

Andrew Goldstein, (Brett Dignam, on the brief) The Jerome N. Frank Legal Services Organization, New Haven, CT, for Petitioner–Appellee.

Before: JACOBS, SOTOMAYOR, HALL, Circuit Judges.

JACOBS, Circuit Judge.

Pablo Fernandez seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court conviction. Christopher Artuz, the Superintendent of Green Haven Correctional Facility, where Fernandez was incarcerated at the relevant time, moved to dismiss Fernandez's petition as time-barred in light of the one-year statute of limitations in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2244(d). The United States District Court for the Southern District of New York (Wood, *J.*) denied Artuz's motion to dismiss. *Fernandez v. Artuz*, 175 F.Supp.2d 682, 687 (S.D.N.Y. 2001).

The timeliness of a habeas petition is a question of law that we review *de novo*. *Cf. Pratt v. Greiner*, 306 F.3d 1190, 1195 (2d Cir.2002) (citing *Smaldone v. Senkowski*, 273 F.3d 133, 136 (2d Cir.2001)). The question turns on whether Fernandez's state *coram nobis* petition became "properly filed" within the meaning of 28 U.S.C. § 2244(d) when it was received by the Appellate Division of the New York State Supreme Court, or (on an earlier date) when it was delivered to prison officials for mailing. We conclude that the prison mailbox rule applies and that Fernandez's federal habeas petition was therefore properly filed within the one-year statute of limitations period.

I

AEDPA requires that a state prisoner seeking federal habeas relief file his federal habeas petition within one year after his state judgment of conviction becomes "final." 28 U.S.C. § 2244(d)(1). Excluded from the one-year limitations period is "[t]he time during which a properly filed application for State post-conviction or other collateral review ... is pending." 28 U.S.C. § 2244(d)(2). Generally, a judgment becomes final "by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *see also Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir.2001).

Fernandez's conviction was unanimously affirmed by the Appellate Division, First Department, *People v. Fernandez*, 249 A.D.2d 3, 670 N.Y.S.2d 840, 843 (1st Dept. 1998), and the New York Court of Appeals denied leave to appeal, *People v. Fernandez*, 92 N.Y.2d 897, 680 N.Y.S.2d 60, 702 N.E.2d 845 (1998). The conviction became final 90 days thereafter—*i.e.*, after the period in which a litigant can petition for a writ of certiorari from the United States Supreme Court—which was November 16, 1998. Absent a "properly filed" state application for collateral review, the AEDPA one-year statute of limitations was set to expire on November 16, 1999. *See Fernandez v. Artuz*, 00–CV–7601 (KMW) (AJP), 2001 WL 506889, at *3 (S.D.N.Y. May 15, 2001). Fernandez's federal habeas petition was dated August 14, 2000. Two hundred seventy-two days of tolling was therefore required to withstand the statute of limitations. Fernandez filed a *coram nobis* petition, which was denied by the First Department on June 15, 2000. So if the *coram nobis* petition was filed on or before September 17, 1999 (272 days before denial), Fernandez's federal habeas

petition withstands the statute of limitations; otherwise, it does not.

On September 15, 1999, Fernandez delivered the *coram nobis* petition to prison authorities for them to mail. The *coram nobis* petition was not received by the First Department until September 27 or 28, 1999. The delay in transit was caused in part by the prison's mistaken belief that Fernandez's prison account had insufficient funds to cover postage.[1] *Fernandez*, 175 F.Supp.2d at 683.

Fernandez's federal habeas petition, dated August 14, 2000, was received in the *pro se* office of the Southern District of New York on August 16, 2000. The State moved to dismiss the petition as untimely pursuant to AEDPA's one-year limitations period. Magistrate Judge Peck recommended that the State's motion be granted. *See Fernandez*, 2001 WL 506889. District Judge Wood rejected the recommendation, denied the State's motion to dismiss, and certified her Opinion and Order (pursuant to 28 U.S.C. § 1292(b)) upon a finding that the otherwise unappealable Order "involve[d] a controlling question of law as to which there is substantial ground for difference of opinion" and "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Fernandez*, 175 F.Supp.2d at 687 (quoting 28 U.S.C.

§ 1292(b)) (internal quotation marks omitted). This Court granted Artuz leave to appeal.

## II

The Supreme Court established what has become known as the prison mailbox rule in *Houston v. Lack*, 487 U.S. 266, 270, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). Interpreting Federal Rules of Appellate Procedure 3(a) and 4(a)(1), the Court held that a *pro se* petitioner's notice of appeal should be deemed filed from the time a prisoner delivers it to prison authorities for forwarding to the district court. *Id.* The Court stressed that *pro se* petitioners, unlike other litigants, are unable to "monitor the processing of their notices of appeal," are precluded from traveling directly to the courthouse to ensure timely filing, and must "entrust the forwarding of [their] notice[s] of appeal to prison authorities whom [they] cannot control or supervise and who may have incentive to delay." *Id.* at 270–71, 108 S.Ct. 2379. "No matter how far in advance the *pro se* prisoner delivers his notice to the prison authorities, he can never be *sure* that it will ultimately get stamped 'filed' on time." *Id.* at 271, 108 S.Ct. 2379.

Many circuits, including this one, have applied the prison mailbox rule in a variety of contexts,[2] most notably to fix the date

---

1. Although the parties dispute whether Fernandez's *coram nobis* petition was received on September 27 or September 28, 1999, that fact is immaterial to the timeliness of Fernandez's federal habeas petition.

2. As the district Court observed, the Second Circuit has consistently applied the mailbox rule to papers filed by state prisoners initiating federal actions. *Fernandez*, 175 F.Supp.2d at 684 n. 1; *see Tapia–Ortiz v. Doe*, 171 F.3d 150, 152 n. 1 (2d Cir.1999) (applying rule to filing of administrative claims under FTCA, but noting that the *Houston* principle does not apply when there is a "specific

statutory regime to the contrary"); *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir.1993) (applying rule to § 1983 complaints filed by state prisoners), *modified on other grounds on reh'g*, 25 F.3d 81 (2d Cir.1994). Other Circuits have done the same. *E.g., Longenette v. Krusing*, 322 F.3d 758, 765 (3d Cir.2003) (extending rule to prisoner contesting administrative proceedings initiated by the FBI); *Casanova v. Dubois*, 304 F.3d 75, 79 (1st Cir.2002) (extending rule to state prisoner filing § 1983 complaint); *Faile v. Upjohn Co.*, 988 F.2d 985, 988–89 (9th Cir.1993) (extending rule to cover service of discovery responses); *Garvey v. Vaughn*, 993 F.2d 776, 783 (11th Cir.1993)

on which a federal habeas petition is filed. *See, e.g., Adeline v. Stinson,* 206 F.3d 249, 251 n. 1 (2d Cir.2000) *(per curiam)* ("When a prisoner is proceeding *pro se,* as petitioner then was, federal courts generally consider his or her petition for habeas corpus to have been filed as of the date it was given to prison officials for forwarding to the court clerk."); *see also Nichols v. Bowersox,* 172 F.3d 1068, 1077 (8th Cir. 1999) (extending *Houston* to federal habeas petition filings, where the relevant language of Rule 3 Governing Habeas Proceedings in United States District Courts Under § 2254 specifically related to receipt: "the clerk of the district court 'shall file the petition' and enter it on the court's docket 'upon receipt of the petition and the filing fee'") (citation omitted); *Jones v. Bertrand,* 171 F.3d 499, 502 (7th Cir.1999) (same); *Hoggro v. Boone,* 150 F.3d 1223, 1226 n. 4 (10th Cir.1998); *Spotville v. Cain,* 149 F.3d 374, 378 (5th Cir.1998); *Burns v. Morton,* 134 F.3d 109, 113 (3d Cir.1998).

■ The timeliness of Fernandez's habeas petition depends upon when his state *coram nobis* petition was "properly filed" pursuant to AEDPA's tolling provision. 28 U.S.C. § 2244(d)(2). If Fernandez's state *coram nobis* petition was "properly filed" on the date he delivered it to prison authorities for mailing (September 15, 1999), his present federal habeas petition was timely filed. If it was not "properly filed" until it was received by the state court on September 27 or 28, 1999, his federal petition was ten or eleven days late.

"Neither AEDPA nor its legislative history explains which state filings qualify as properly filed applications." *Villegas v. Johnson,* 184 F.3d 467, 470 (5th Cir.1999) (citing S.Rep. No. 104–179 (1995)). Absent Congressional guidance, courts either have applied the prison mailbox rule, or they have interpreted "properly filed" as synonymous with "filed under state law" and then looked to state law.

The Ninth Circuit applies the prison mailbox rule to determine when a state petition is "properly filed" for AEDPA tolling purposes: "we [have] squarely held that the mailbox rule applies with equal force to the filing of state as well as federal petitions, because '[a]t both times, the conditions that led to the adoption of the mailbox rule are present; the prisoner is powerless and unable to control the time of delivery of documents to the court.'" *Anthony v. Cambra,* 236 F.3d 568, 575 (9th Cir.2000) (citation omitted); *see also Saffold v. Newland,* 224 F.3d 1087, 1091 (9th Cir.2000), *amended by* 250 F.3d 1262, 1268 (9th Cir.2000), *overruled on other grounds by Carey v. Saffold,* 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002). *But see Koerner v. Grigas,* 328 F.3d 1039, 1043 n. 1 (9th Cir.2003) ("[B]ecause Nevada does not recognize a prison mailbox rule for post-conviction petitions, Koerner's third petition was not filed under Nevada law until actually received by the clerk of court.") (internal citation and quotation marks omitted).

■ Other circuits, however, defer to the state court's application of state filing laws. *See, e.g., Adams v. LeMaster,* 223 F.3d 1177, 1181–82 (10th Cir.2000); *Webster v. Moore,* 199 F.3d 1256, 1258–59 (11th Cir.2000); *Coleman v. Johnson,* 184 F.3d 398, 401–02 (5th Cir.1999). Artuz urges us

---

(extending rule to state and federal prisoners filing § 1983 complaints and FTCA claims). *But see Guirguis v. INS,* 993 F.2d 508, 510 (5th Cir.1993) (declining to extend mailbox rule to filing appeals from the BIA, where the

relevant Federal Rule of Appellate Procedure stated that "filing shall not be timely unless the papers are received by the clerk within the time fixed for filing").

to follow these cases because New York (in other contexts) often rejects the prison mailbox rule announced in *Houston v. Lack. See, e.g., Grant v. Senkowski,* 95 N.Y.2d 605, 721 N.Y.S.2d 597, 744 N.E.2d 132, 134 (2001) (holding that Article 78 papers are "filed" under New York law when received by the court, not when the *pro se* prisoner delivers them to prison officials for mailing). However, New York's rejection of the mailbox rule does not preclude its application by a *federal* court in tolling a *federal* statute of limitations.[3] *Cf. Jones,* 171 F.3d at 501 (reconciling mailbox rule's application to federal habeas petition filings despite Rule 3(b)'s clear language contemplating receipt, because "Rule 3(b) determines when a case is filed in the procedural sense for the purpose of being placed on the court's docket, and the mailbox rule governs when a case is filed in the substantive sense for statute of limitations purposes").

The Supreme Court considered a related issue in 2000: whether a state application was "properly filed" for purposes of tolling the AEDPA one-year statute of limitations notwithstanding that it contained claims procedurally barred under New York law.[4]

*Artuz v. Bennett,* 531 U.S. 4, 8, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000). The Court emphasized that "the question whether an application has been 'properly filed' is quite separate from the question whether the claims *contained in the application* are meritorious and free of procedural bar." *Id.* at 9, 121 S.Ct. 361. In announcing this distinction, the Court stated, in dicta, that:

> [A]n application is *"properly* filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.

*Id.* at 8, 121 S.Ct. 361 (citations omitted). This approach would not determine the present appeal. True, the local rules of New York State courts specify that a motion "shall be considered filed only upon receipt." 22 N.Y.C.R.R. § 600.2(a)(6). However, there is no deadline at all for filing *coram nobis* petitions. *See People v. Langfelt,* 21 A.D.2d 267, 249 N.Y.S.2d 949 (1st Dept.1964) (requiring lower court to conduct a hearing on petitioner's *coram*

---

**3.** Application of the mailbox rule in these circumstances is consonant with AEDPA's goals of "further[ing] the principles of comity, finality, and federalism." *Williams v. Taylor,* 529 U.S. 420, 436, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). Application of the rule evinces no disrespect for the competence of state courts, their procedures, or the stability of state verdicts. As already noted, the mailbox rule's application solely for the purpose of calculating a *federal* statute of limitations has no bearing on New York's own *coram nobis* proceedings or the substance of its adjudication of a properly filed application under state law. The rule already applies to a broad variety of state prisoner filings in federal actions; so it does not implicate new burdens on the state prison system. As Judge Wood noted below, respect for state proceedings is built into AEDPA's scheme because state habeas proceedings must be completed before a

state prisoner may file a federal habeas petition. *See* 28 U.S.C. § 2254(b)(1)(A). Applying the mailbox rule merely grants the full statute of limitations for *pro se* prisoners attempting to reach the courts.

**4.** In *Bennett,* petitioner's application from state post-conviction relief contained claims subject to two procedural bars under New York law:

> a bar against raising an issue that had been "previously determined on the merits upon an appeal from the judgment," N.Y.Crim. Proc. Law § 440.10(2)(a) (McKinney 1994), and a bar against raising a claim that was available on direct appeal but was not raised because of the defendant's "unjustifiable failure," § 440.10(2)(c).

531 U.S. at 7, 121 S.Ct. 361.

*nobis* petition filed more than two years following petitioner's release from prison); *see also People v. Richetti,* 302 N.Y. 290, 97 N.E.2d 908, 912 (1951). Regardless of when the New York court "considers" a *coram nobis* petition to be filed, the date of filing does not render it proper or improper.

Moreover, because New York State prescribes no deadline for *coram nobis* petitions, New York State courts will never have occasion to decide whether the prison mailbox should apply to them. Without a time limitation, a prisoner's state *coram nobis* petition will always be timely regardless of when it is delivered to prison authorities or received by the court. There is no and can be no real conflict between state law and federal law where there is no state deadline for filing the petition that tolls the AEDPA limitations period. We therefore apply the federal mailbox rule to ascertain when a state petition is "properly filed" for purposes of tolling the AEDPA statute of limitations.

 To toll the AEDPA statute of limitations, the state petition must be both "properly filed" and "pending" during the tolling period. Artuz argues that application of the prison mailbox rule would read the word "pending" out of 28 U.S.C. § 2244(d)(2) because a *coram nobis* petition that has been timely delivered to the prison is not (also) "pending" until it is received at court. Our reading of AEDPA gives effect to both terms. In *Carey v. Saffold,* the Supreme Court defined "pending" to mean: "through a period of continuance ... of" or "until the ... completion of"; "[i]n other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains pending." 536 U.S. 214, 219–20, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002) (internal quotation marks and citation omitted). Thus the term "properly

filed" fixes the date that starts the tolling of the AEDPA statute of limitations, and the term "pending" marks the end point, when the state court ultimately decides the prisoner's case. *See id.* at 219–220, 122 S.Ct. 2134 (holding that the "pending" period includes the time between a lower state court's decision and petitioner's filing of a notice of appeal to a higher state court).

## CONCLUSION

For the foregoing reasons, we affirm the order of the district court.