**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 15 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

DEREK D. BURGER,

        Petitioner - Appellant,

v.

H.N. SCOTT, Warden,

        Respondent - Appellee.

No. 01-6285

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CIV-00-2063-M)

---

Submitted on the briefs:

Gloyd L. McCoy of Coyle, McCoy & Burton, Oklahoma City, Oklahoma, for
Petitioner-Appellant.

W.A. Drew Edmondson, Attorney General of Oklahoma, William R. Holmes,
Assistant Attorney General, Oklahoma City, Oklahoma, for Respondent-Appellee.

---

Before **SEYMOUR** , **McKAY** , and **MURPHY** , Circuit Judges.

---

**McKAY** , Circuit Judge.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Petitioner Derek D. Burger, an Oklahoma state inmate appearing *pro se*, appeals the district court's dismissal of his 28 U.S.C. § 2241 petition for writ of habeas corpus as falling outside the federal statute of limitations. Previously we determined that Burger had made the required "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(b)(2), and therefore we granted a certificate of appealability (COA) and ordered supplemental briefing on the issue of whether the district court properly dismissed Burger's petition as untimely. Because we conclude that equitable tolling should have been applied in this case, we reverse and remand to the district court for further proceedings.

## I. Background

Burger is currently serving a fifty-year sentence for robbery with a firearm. He was considered for parole in December of 1996, 1997, and 1998, pursuant to an annual parole consideration date under existing Oklahoma Pardon and Parole Board policy, but he was denied parole on each occasion. In July 1997, the Oklahoma law regarding parole consideration was amended to lengthen the period of reconsideration after the denial of parole from one to three years for persons

convicted of a violent crime. *See* Okla. Stat. Ann. tit. 57, § 332.7 (West 1991 & Supp. 2002). Consequently, the Oklahoma Pardon and Parole Board informed Burger on February 17, 1999, that his next parole hearing had been moved from December of 1999 to December of 2001.

In a state habeas proceeding filed in the Cleveland County District Court, Burger challenged this action as violating the *Ex Post Facto* Clause of the United States Constitution. The circumstances surrounding the timing of this state filing form the core of the current dispute. While his petition was date-stamped as "filed" by the state district court on May 12, 2000, Burger contends he actually mailed his petition to that court on January 7, 2000. Because Oklahoma imposes no time limits for filing applications for post-conviction relief in the district courts, *see Moore v. Gibson,* 27 P.3d 483, 487 (Okla. Crim. App. 2001), the filing date had no bearing on the timeliness of Burger's state petition, which was ultimately denied on the merits by the district court and the Oklahoma Court of

Criminal Appeals (OCCA). [1]  The state court filing date did, however, prove critical to Burger's filing in federal court.

Burger filed his federal petition on December 13, 2000, fourteen days after the OCCA ruled on his state claim.  The State responded, arguing *inter alia,* that Burger's federal claim was barred by the one-year statute of limitations pursuant to 28 U.S.C. § 2244(d)(1).  According to the State, Burger's federal limitations period began to run on February 17, 1999, the day he received notice of the change in his parole reconsideration date; consequently, Burger had until February 17, 2000, to seek federal habeas relief.  Therefore, the State argued, Burger's federal petition was filed nearly ten months outside the one-year limitations period.  Burger objected to the State's timeliness argument by alleging that he had, in fact, mailed his state petition on January 6, 2000, [2] and that

---

[1]  As noted by the district court, although Burger filed a petition for writ of habeas corpus, rather than a post-conviction application, the Oklahoma Court of Criminal Appeals has recognized that both of these proceedings are filed pursuant to the Oklahoma Uniform Post-Conviction Procedure Act, Okla. Stat. tit. 22, §§ 1080-1089.  *See Delfrate v. Okla. Dep't of Corr.,* 991 P.2d 549, 552 (Okla. Crim. App. 1999); *see also Okla. ex rel. Coats v. Hunter,* 580 P.2d 158, 159 (Okla. Crim. App. 1978) (noting that the right to writs of habeas corpus in criminal cases are "incorporated into and amplified by" the Act).

[2]  There is some confusion in the record concerning the date on which Burger claims he mailed his state petition.  Earlier in this proceeding, Burger argued that he mailed the petition on January 6, 2000.  R., Doc. 9 at 2.  With the benefit of prison records, Burger has argued in later pleadings that the mailing date is January 7, 2000.  *See id.,* Doc. 17 at 2; Aplt. Supp. Br. at 4.  The evidence in the record before this court does not support a mailing date any earlier than

(continued...)

-4-

therefore the federal limitations period should be tolled during the pendency of his state petition.  According to Burger, the four-month delay in getting his petition "filed" was beyond his control.  Specifically, Burger claimed:

> [t]he Cleveland County District Court was playing some type of game with inmates Petition, that's why it wasn't filed until May 12, 2000. See there isn't any [sic] fees in filing a Writ of Habeas Corpus in the State Courts system, but Cleveland County District Court elected to charge Petitioner a fee of $122.00.  Taken into consideration that Petitioner's intention was that his Petition should have been filed on the 6th or 7th day of January, 2000.  Petitioner could not be at fault because the Cleveland County District Court held his Petition for four (4) months before it was filed.

R., Doc. 9 at 2.  At the time of his objection, Burger's only evidence of a January filing was his notarized verification, which was attached to his original state petition and dated January 6, 2000.

The magistrate judge assigned to the case ordered the State to address Burger's claim that he timely filed his state petition.  The State subsequently filed a supplemental response stating that

> [t]he undersigned spoke with the Cleveland County Deputy Court Clerk that handles the habeas filings.  She advised that there is nothing in the records in Cleveland County to either confirm or deny [Burger's] claim that he mailed his state habeas petition to them in January of 2000.  Records or copies of pre-filing correspondence are not logged in or kept by the Cleveland County Court Clerk's office.

---

[2](...continued)
January 7.  *See id.,* Doc. 17, ex. C (purported prison mail log showing entry date of January 7, 2000).

Consequently, no records or computer entries exist regarding [Burger's] state habeas petition . . . prior to May 12, 2000.

The deputy clerk did advise, however, that such petitions are often not filed when received, and that they are commonly returned to prisoners with instructions regarding how to apply for *in forma pauperis* status and with instructions on the proper format for the summons. Once the prisoner provides the information in the manner instructed, the Clerk takes the pleading to the presiding judge for a determination of whether it is ready to be filed.

*Id.,* Doc. 13 at 1.

The magistrate judge recommended that Burger's petition be dismissed as untimely pursuant to § 2244(d)(1). Specifically, the magistrate judge found the applicable limitations period began to run on February 17, 1999, the date when "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." R., Doc. 15 at 3 (quoting § 2244(d)(1)(D)). The magistrate judge rejected Burger's argument that the provisions of § 2244(d)(1)(C) (allowing the limitations period to begin on the date on which the constitutional right asserted in the petition was initially recognized by the Supreme Court) provided the starting point for the running of the limitation period. Consequently, the magistrate judge concluded that Burger had until February 17, 2000, to file his federal habeas claim and that therefore, absent some applicable tolling provision, Burger's filing on December 13, 2000, was untimely.

The magistrate judge then found that the appropriate limitations period was not subject to either statutory or equitable tolling. As to statutory tolling, the magistrate judge noted "[Burger] provides no demonstrative support for the assertion that his state habeas petition was received by the state district court prior to its filing date of May 12, 2000." *Id.* at 4. Acknowledging Oklahoma's refusal to recognize a prisoner mailbox rule for post-conviction applications filed in the district courts, [3] the magistrate judge searched for evidence that Burger delivered a properly verified application for post-conviction relief to the appropriate district court for the purposes of filing. *See Moore,* 27 P.3d at 488; R., Doc. 15 at 5-6. Finding none, the magistrate judge concluded "there is nothing in the record to indicate that [Burger's] state petition was received on any day other than May 12, 2000, when both parties agree the petition was filed in the state district court." R., Doc. 15 at 6. Recommending against equitable tolling of the federal limitations period, the magistrate judge found that "[Burger] has not diligently pursued his ex post facto claim, and [he] presents no extraordinary circumstances compelling . . . equitable tolling." *Id.* at 7.

Burger objected to the magistrate judge's report and recommendation and specifically addressed the timeliness issue, providing additional evidence to the

---

[3]     Under the federal prisoner mailbox rule, a *pro se* prisoner's cause of action is considered filed when the prisoner delivers the pleading to prison officials for mailing. *See Houston v. Lack,* 487 U.S. 266, 276 (1988).

district court that his state petition was properly submitted in January 2000.

In his objection, Burger alluded to an apparent misunderstanding he had with the county court about his filing fee, [4] but he nevertheless provided the federal court with a copy of two checks made out to the Cleveland County Court Clerk. The first check, No. 017513, was dated January 3, 2000, in the amount of $122.00, and included a notation indicating that Burger received the check on January 6, 2000. The second check, No. 018862 for the same amount, was dated June 5, 2000. Burger argued that after he mailed his petition and check on January 7, he received no word from the county court about his case "until the Court requested an additional $122.00 . . . thus making the total filing fees of $244.00." *Id.* Doc. 17 at 3.

In addition to the two checks, Burger provided a copy of the prison legal mail log, showing that he placed something in the mail addressed to the Cleveland County Court Clerk on January 7, 2000. He also provided a copy of the prison's notary record log, indicating that he had something notarized for "Cleveland Cty"

---

[4] As indicted previously, at some point Burger apparently believed that no filing fee was required for his petition, suggesting that he may have withheld payment even after he had a check issued to the county court. *See* R., Doc. 16 at 2; Doc. 9 at 2. Later, Burger specifically alleged that he included a check for the appropriate filing fee with his petition in early January, 2000. *See id.* Doc. 17 at 2, 3. This allegation is not contested by the state. The confusion over Burger's payment led the magistrate judge to surmise that the four-month delay between January 7 (the date of alleged mailing of the petition) and May 12, 2000 (the date of filing) was due to Burger's failure to pay a filing fee. *See id.* Doc. 15 at 4.

on January 6. Finally, he provided a receipt for payment, issued by the Cleveland County Court, showing the court's receipt of check No. 17513 on May 15, 2000. Attached to the receipt was a letter from the court clerk, dated June 1, 2000, requesting prison officials replace check No. 17513 because it was posted as received more than ninety days after its issuance, making it void. During this time, Burger's application remained on file with the county court with a date-stamp showing the application filed on May 12.

Despite this additional evidence of a timely filing, the district court adopted the magistrate judge's recommendation and summarily dismissed Burger's federal petition. This appeal followed.

## II. Standard of Review

In an appeal of the dismissal of a federal habeas corpus petition, we review a district court's findings of fact for clear error and its conclusions of law *de novo*. *Davis v. Executive Dir. of Dep't of Corr.*, 100 F.3d 750, 756 (10th Cir. 1996). Specifically, we review *de novo* the district court's denial of a habeas petition based on § 2244(d). *See Gibson v. Klinger,* 232 F.3d 799, 803 (10th Cir. 2000). However, we review the district court's decision on equitable tolling of the limitation period for an abuse of discretion. *Woodward v. Williams,* 263 F.3d 1135, 1142 (10th Cir. 2001), *cert. denied*, 122 S. Ct. 1442 (2002).

### III.  AEDPA Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), applications for writs of habeas corpus challenging the execution of a state sentence under § 2241 are subject to a one-year period of limitations. According to § 2244(d), that period runs

> from the latest of – (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  In his supplemental brief on appeal, Burger contends that the district court erred in dismissing his petition as untimely because his federal habeas petition was filed within one year of the OCCA's decision to deny state relief.  This argument is without merit as it ignores the fundamental structure of the federal statute, which incorporates the concept of exhaustion of state remedies into a tolling provision rather than into the limitation itself.  *See* 28 U.S.C. § 2244(d)(2);  *Carey v. Saffold,*   122 S. Ct. 2134, 2138 (2002) ("AEDPA's limitations period – with its accompanying tolling provision . . . promotes the exhaustion of state remedies while respecting the interest in the finality of state

-10-

court judgments.") (quotation omitted). We recognize that, as a federal statute that interacts with state procedural rules, § 2244(d) will sometimes force a state prisoner to act expeditiously to preserve his federal claims despite the procedural lenience of state law, which may forgive substantial delay. This is especially true in a case, such as this, where the State provides no time limit for filing an initial habeas petition in the district courts. Nevertheless, Congress did not draft the federal limitations period to begin running only at the end of a particular state's exhaustion process. Instead, the statute is clear that the limitations period starts from the latest of four specific dates, but that the period may be tolled once the state court exhaustion process has begun. *See* § 2244(d)(1),(2). In the present case, our review of the record convinces us that the district court was correct in concluding that Burger's case was governed by § 2244(d)(1)(D), thus starting a one-year limitations period beginning on February 17, 1999, the undisputed date Burger learned of the change in his parole reconsideration date. [5] Burger's federal

---

[5] In his request for a COA, Burger alternatively argued that the limitations period governing his claim should begin on March 28, 2000, pursuant to § 2244(d)(1)(C), which states that the period shall run from "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Burger relied on *Garner v. Jones,* 529 U.S. 244 (2000), decided March 28, 2000, as a case newly recognizing the constitutional right to be free from *ex post facto* violations due to retroactive changes in parole reconsideration frequency. This particular argument concerning timeliness was not further addressed by Burger in his supplemental briefs in this

(continued...)

-11-

application, filed on December 13, 2000, was therefore untimely absent some reason to toll the statute.

## IV. Statutory Tolling

Burger argues that he "perfected" his state habeas corpus petition by presenting it, along with a check for the proper filing fee, to prison officials on January 7, 2000, thus tolling the one-year limitations period pursuant to § 2244(d)(2). That section states that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). According to Burger, his state petition was "properly filed" on January 7, 2000, and remained pending until the OCCA affirmed its denial on November 29 **,** 2000. Thus, given the benefit of statutory tolling, Burger contends that his federal petition was timely filed on December 13, 2000.

---

[5](...continued)
court. Nevertheless, we conclude the argument has no merit. Having reviewed the case, we agree with the district court that *Garner* does not newly recognize either a right concerning *ex post facto* laws generally, or a more focused constitutional right derived from the proposition that a retrospective decrease in the frequency may potentially change the quantum of criminal punishment. *See Garner,* 529 U.S. at 250 (reiterating the standard first recognized and adopted in 1995 in *California Department of Corrections v. Morales,* 514 U.S. 499 (1995)).

In enacting § 2244(d)(2), Congress did not provide guidance on the meaning of the term "properly filed." *See Adams v. LeMaster,* 223 F.3d 1177, 1181 (10th Cir. 2000). For purposes of this section, however, the Supreme Court has stated:

> An application is "filed," as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record. And an application is "*properly filed*" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.

*Artuz v. Bennett,* 531 U.S. 4, 8 (2000) (citations and footnote omitted) (emphasis in original). This court has similarly stated,

> [w]e believe that a "properly filed" application is one filed according to the filing requirements for a motion for state post-conviction relief. These requirements may include: (1) the place and time of filing; (2) the payment or waiver of any required filing fees; (3) the obtaining of any necessary judicial authorizations that are conditions precedent to filing, such as satisfying any filing preconditions that may have been imposed on an abusive filer; and (4) other conditions precedent that the state may impose upon the filing of a post-conviction motion.

*Habteselassie v. Novak,* 209 F.3d 1208, 1210-11 (10th Cir. 2000) (footnote omitted). Thus, "state procedural law must govern when determining whether a state petition is 'properly filed.'" *Adams,* 223 F.3d at 1181 (citing cases).

Apart from the State's response to the district court reflecting the practice of the Cleveland County Court for accepting initial habeas applications, the

-13-

parties have provided no guidance on the particular state-law requirements for such filings in the district courts. The State's response suggests, at least, that the Cleveland County Court insists that petitioners comply with certain minimum requirements before that court will accept a document as filed. Both the Oklahoma Supreme Court and the OCCA have indicated that state filing requirements, at least at the appellate level, are interpreted strictly. *See Dubuc v. Sirmons,* No. 93793, 2001 WL 744467, at *3 (Okla. July 3, 2001) (unpublished) ("The Court of Criminal Appeals deems itself without cognizance of an appeal where the *pro se* prisoner fails timely to comply with the statutory cost requirements. The presence of the pauper's affidavit is a *sina qua non* of the filing's sufficiency."); *Behrens v. Patterson,* 952 P.2d 990, 991 (Okla. Crim. App. 1997) ("[S]tate law and this Court's *Rules* establish the filing date . . . as the date when . . . the item is actually received by the Clerk before the close of business in proper order and with the necessary number of copies and all necessary filing fees, or a pauper's affidavit for waiver of filing fees.").

Significantly, the OCCA has also held that initial habeas proceedings in Oklahoma district courts are considered commenced, and thus "filed" for purposes of Oklahoma's post-conviction statute, "when a properly verified application for post-conviction relief is *delivered* to the proper district court for the purpose of filing." *Moore,* 27 P.3d at 488 (emphasis added). In *Moore,* the

-14-

OCCA rejected a mailbox rule for *pro se* prisoners' initial post-conviction filings in the Oklahoma district courts, thus directing the inquiry as to whether a state petition is "properly filed" for purposes of § 2244(d) to an examination of evidence showing that the proper documents were either delivered to or received by the courts, rather than to or by prison officials. Thus, in *Moore v. Gibson,* 250 F.3d 1295, 1288-89 (10th Cir.), *cert. denied*, 122 S. Ct. 476 ( 2001) (hereinafter *Moore II)*, we rejected the prisoner's claim that his state petition was "properly filed" upon delivery to prison officials, and held his federal habeas petition untimely under § 2244(d) when there was no additional evidence of either receipt or delivery to the state court beyond the court's file-stamp-date. [6]

---

[6]   In *Moore II,* petitioner was given until April 23, 1997, to file his federal habeas petition, but his state post-conviction application was date-stamped April 24, 1997, precluding statutory tolling of the federal limitation period. On the record before us in that case, we noted that, even if we were to assume petitioner's state application was received, but not file-stamped before the federal deadline, we would conclude it untimely because his federal petition was filed nine days after the OCCA affirmed the denial of his state petition. To conclude otherwise, we noted, "we would have to assume that it was received by the Oklahoma court but not file-stamped for well over a week. Such a long delay between receipt and file-stamping is not supported by the record." *Moore,* 250 F.3d at 1299 n.2. A significantly different record presents itself in the present case. Burger claims to have filed his state application roughly forty days before the federal deadline, yet he filed his federal petition only fourteen days after the OCCA affirmed the state district court's denial of his claims. Nevertheless, despite the arguable timeliness of Burger's petition, the record is devoid of evidence demonstrating Burger's petition moved beyond its delivery to prison officials and was actually delivered to the state district court in accordance with Oklahoma law.

-15-

Oklahoma's rejection of the prisoner mailbox rule for initial post-conviction filings and our previous ruling in *Moore II* are fatal to Burger's claim for statutory tolling in the present case. The magistrate judge concluded that Burger failed to demonstrate his habeas petition was received by the state district court prior to its filing date of May 12, 2000, and this conclusion is supported by the record. As our ruling in *Moore II* indicates, evidence showing that Burger's petition (whether "perfected" or not) was given to prison officials is not relevant to the question of whether it was actually delivered to the proper district court for the purposes of filing so as to statutorily toll the federal statute of limitations. *See Moore II,* 250 F.3d at 1298-99 ("Because Oklahoma does not recognize the prisoner mailbox rule, it is immaterial when [petitioner] gave his petition to prison officials."). Burger offers no evidence beyond his submissions to prison officials to demonstrate that a properly verified application for post-conviction relief was actually delivered to the Cleveland County Court prior to May 12, 2000, and relies on speculation to account for the four-month delay between January 7 and May 12, 2000. We have independently reviewed the record for evidence of delivery to or acceptance by the state district court, and we have found none that mandates that this court retreat from the clear import of our holding in *Moore II* that, in Oklahoma, evidence of delivery to prison officials, by

-16-

itself, is insufficient to demonstrate that a post-conviction application is "properly filed" in the state courts in order to statutorily toll the federal limitation period.

## V. Equitable Tolling

The same evidence that we conclude is immaterial to a claim of statutory tolling under § 2244(d), however, compels a different conclusion in our review of Burger's claim in equity. In *Miller v. Marr,* 141 F.3d 976, 978 (10th Cir. 1998), this court held that § 2244(d) is not jurisdictional, but rather is subject to equitable tolling. In determining whether equitable tolling is appropriate, we recognize that "[d]ismissal of a *first* federal habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty." *Lonchar v. Thomas,* 517 U.S. 314, 324 (1996). At the same time, equitable tolling should not be used to thwart the intention of Congress in establishing a statute of limitations for habeas claims. Accordingly, we have limited equitable tolling of the one-year limitations period to "rare and exceptional" circumstances. *Gibson,* 232 F.3d at 808. Therefore,

> [e]quitable tolling would be appropriate, for example, when a prisoner is actually innocent, when an adversary's conduct – or other uncontrollable circumstances – prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period. Simple excusable neglect is not sufficient.

-17-

*Id.* (citations omitted); *see also Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir. 2000) ("[Equitable tolling] is only available when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control.").

In this case, the magistrate judge summarily found that Burger had not diligently pursued his ex post facto claim. While published opinions addressing this issue are few, this Circuit has generally declined to apply equitable tolling when it is facially clear from the timing of the state and federal petitions that the petitioner did not diligently pursue his federal claims. *See, e.g., Adams,* 223 F.3d at 1184 (holding that "[petitioner's] nearly ten-year hiatus from pursuit of his federal petition and his repetitive second state petition filed days before expiration of the applicable federal statute of limitations does not demonstrate the requisite diligence to justify equitable tolling."); *Miller,* 141 F.3d at 978 (holding petitioner did not diligently pursue federal claims during the time between the completion of his state post-conviction review in October 1993, and his subsequent federal filing in July 1997); *cf. Marsh,* 223 F.3d at 1220 (noting that with the exception of an eight-month delay following the dismissal of a first federal habeas petition, petitioner diligently pursued his claims). These earlier cases provide only limited guidance on the issue of diligence in this case, however, as they contain significantly different factual situations, often involving

stale convictions and the subsequent passage of AEDPA or other law affecting the statute of limitations.

The limitations period that attaches to Burger's claim arises under § 2244(d)(1)(D), which postpones the running of the one-year statute of limitations to "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Under the clear language of the statute, Burger had a right to toll the federal limitations period at any time during that year by delivering a properly verified application for post-conviction relief to the state district court. For purposes of equitable tolling in the present case, it is enough for this court to say that evidence of a proper filing during that period and under the applicable state law may be sufficient to meet the requirement that an inmate diligently pursue his claims.

The magistrate judge also found that Burger "present[ed] no extraordinary circumstances compelling the equitable tolling of the limitation period." R., Doc. 15 at 7. On occasion this court has held that certain allegations of exceptional circumstances are inadequate to justify equitable tolling. *See, e.g., Gibson,* 232 F.3d at 808 (holding petitioner's alleged ignorance of AEDPA's statute of limitations is insufficient to warrant equitable tolling); *Marsh,* 223 F.3d at 1220 (holding delays caused by prison inmate law clerk and law library

-19-

closures does not justify equitable tolling). The parties have not provided, nor have we found any cases where this court has reviewed the same or similar circumstances presented by Burger in this case.

Although not in the context of AEDPA's limitations provision, the Supreme Court has applied the doctrine of equitable tolling to extend a federal limitations period where a claimant has actively pursued his judicial remedies by filing a defective state pleading during that period. In *Burnett v. N.Y. Cent. R.R.,* 380 U.S. 424 (1965), the Court noted the following as considerations favoring equitable tolling in that case: "Petitioner here did not sleep on his rights but brought an action within the statutory period in the state court of competent jurisdiction. . . . Petitioner, then, failed to file . . . in the federal courts, not because he was disinterested, but solely because he felt that his state action was sufficient." *Id.* at 429. The Supreme Court has also indicated that equitable tolling may be applied where a court has led a particular plaintiff to believe that he or she had done all that is required under the circumstances. *See Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 151 (1984).

We are guided by similar considerations in the present case. While Oklahoma imposes no time limits for filing applications for post-conviction relief in the district courts, since 1996 Oklahoma inmates have been aware that they have one year in which to file their claims in state court in order to benefit from

-20-

tolling pursuant to § 2244(d)(2). The record in this case shows that Burger was given notice of the change in his parole reconsideration date on February 17, 1999. Therefore, in early January of 2000, he attempted to file with the Cleveland County Court what he believed to be a sufficient state habeas petition. He drew a check on January 3, signed and verified his petition before a notary public on January 6, and placed the documents in the prison mail on January 7. Nevertheless, over four months elapsed from that date before Burger's petition was stamped "filed," during which time the record before us is silent.

The record then shows that the district court stamped his petition as filed on May 12, 2000, despite the fact that the check for the filing fee was over ninety days old and was therefore void. That check was "receipted" on May 15, but returned to Burger for a replacement check. The record also shows that a second, valid check was sent on or about June 5, 2000; nevertheless, the state district court considered Burger's application timely filed as of the application's file date of May 12. Overall, the record includes substantial circumstantial evidence that Burger delivered a properly verified application to the Cleveland County Court on the date alleged and that the court was in possession of his petition during the entire four-month period. [7] A careful review of this evidence demonstrates that

---

[7] While the OCCA has been comparatively silent on the issue, both the United States Supreme Court and the Oklahoma Supreme Court have referred to

(continued...)

-21-

Burger did not sleep on his federal rights, but rather believed that his state petition was sufficient to begin the State's process of reviewing his claim, thus tolling the federal statute. Given the opportunity to rebut this evidence at the federal district court level, the State was unable to present any evidence showing that Burger did not diligently pursue his claim or that the four month delay was otherwise due to circumstances within Burger's control.

Burger's request for equitable tolling must also be reviewed in light of the unique procedural impediments affecting the timing of his petition. The fact that Oklahoma does not apply a mailbox rule to initial habeas petitions forces *pro se* prisoners to rely on the good faith of not only prison officials, but also of state court employees to see that their petitions are expeditiously processed. Moreover, the fact that the Cleveland County District Court keeps no records or copies of pre-filing correspondence or of partially filed or insufficient petitions places the burden solely on prisoners to collect evidence beyond the prison's logs to demonstrate delivery to that court. Such impediments needlessly complicate the federal court's efforts to determine the source of any delay, and erode the

---

[7](...continued)
the use of circumstantial evidence to resolve difficult questions concerning the exact date of a prisoner filing. *See Houston,* 487 U.S. at 275-76; *Woody v. State ex rel. Dep't of Corr.,* 833 P.2d 257, 258 (Okla. 1992).

principles embodied in AEDPA's limitations period and accompanying tolling provision by encouraging premature and needless federal filings.

While there is inherent tension between the federal limitations period in § 2244(d) and the requirement that prisoners exhaust state remedies before proceeding to federal court on their claims, *see, e.g., Duncan v. Walker,* 533 U.S. 167, 185-86 (2001) (Breyer, J., dissenting), the Supreme Court recently warned against interpretations of AEDPA that exacerbate this tension. *Saffold,* 122 S. Ct. at 2138. Rejecting California's restrictive interpretation of the term "pending" for the purposes of statutory tolling under § 2244(d)(2), the Court stated:

> The exhaustion requirement serves AEDPA's goal of promoting comity, finality, and federalism, by giving state courts the first opportunity to review the claim, and to correct any constitutional violation in the first instance. And AEDPA's limitations period – with its accompanying tolling provision – ensures the achievement of this goal because it promotes the exhaustion of state remedies while respecting the interest in the finality of state court judgments. California's interpretation violates these principles by encouraging state prisoners to file federal habeas petitions *before* the State completes a full round of collateral review. This would lead to great uncertainty in the federal courts, requiring them to contend with habeas petitions that are in one sense unlawful (because the claims have not been exhausted) but in another sense *required* by law (because they would otherwise be barred by the 1-year statute of limitations).

*Id.* (quotations and citations omitted) (emphasis in original). [8] These broader policies, combined with the unique facts of the present case that (1) Burger claims to have filed, and has a verified affidavit and prison logs, as well as other relevant evidence to support a filing within the limitations period; (2) Oklahoma has rejected the prisoner mailbox rule for initial habeas filings in the district courts; (3) the Cleveland County District Court keeps no records of attempts to file or of insufficient filings; (4) Burger's state petition was ultimately accepted as timely filed despite an apparent deficiency in the fee; and (5) Burger's federal petition was filed within two weeks of the completion of his state exhaustion process, lead this court to conclude that Burger diligently pursued his judicial remedies and failed to timely file his federal petition due solely to extraordinary circumstances beyond his control.

The magistrate judge found that Burger "provide[d] no demonstrative support for the assertion that his state habeas petition was received by the state district court prior to its filing date of May 12, 2000." R., Doc. 15 at 4. The magistrate judge also recommended the district court deny equitable tolling,

---

[8] *Saffold* involved the timeliness of a federal habeas petition filed under 28 U.S.C. § 2254, with its accompanying exhaustion requirement found in § 2254(b). While no statutory exhaustion requirement applies to petitions filed pursuant to § 2241, it is well-settled that claims raised in § 2241 petitions must be exhausted before a federal court will hear them. *See Montez v. McKinna,* 208 F.3d 862, 866 (10th Cir. 2000) ("A habeas petitioner is generally required to exhaust state remedies whether his action is brought under § 2241 or § 2254.").

based, in part, on Burger's failure to demonstrate that he diligently pursued his federal claim. In his objections to the report and recommendation, however, Burger presented the evidence, listed above, in support of his contention that he delivered a properly verified application to the state district court during the federal limitation period. Although the district court summarily adopted the magistrate judge's report and recommendation "in all respects," the court did not discuss its rejection of this relevant and uncontroverted evidence. As the foregoing discussion indicates, however, Burger has made a sufficiently compelling case for a court to find that equitable tolling was appropriate. Therefore, we conclude that the district court should have applied equitable tolling to relieve Burger from the one-year statute of limitations.

## VI. Conclusion

The district court's dismissal of Burger's petition for habeas corpus as untimely is AFFIRMED in part, REVERSED in part, and the matter is REMANDED for application of equitable tolling and consideration of the merits of Burger's petition.