**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**August 9, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | |
| v. | No. 21-7024 |
| | (D.C. Nos. 6:20-CV-00456-JFH & |
| ANTHONY LOUIS TINSMAN, JR., | 6:04−CR−00076−JFH−1) |
| | (E.D. Okla.) |
| Defendant - Appellant. | |

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **BACHARACH**, **MURPHY**, and **CARSON**, Circuit Judges.
_____

Petitioner Anthony Tinsman, appearing pro se, asks the Court to grant a certificate

of appealability (COA) and remand his case to the district court for resentencing.  For the

reasons stated below, we deny his request for a COA.

I.

Petitioner moved to vacate his federal sentence under 28 U.S.C. § 2255 fifteen

years after his conviction and sentence became final.[1]  He sought to vacate his sentence

based on United States v. Davis, a decision the Supreme Court handed down on June 24,

_____

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Petitioner did not directly appeal his conviction or sentence.

2019.  139 S. Ct. 2319 (2019).  But Petitioner filed his motion on December 7, 2020—almost six months later than § 2255(f)(3) allows.  See § 2255(f)(3) ("A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from . . . the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review . . . .").  So the district court dismissed his motion as time barred, reasoning that because the clock starts running when the Supreme Court announces the constitutional right, Petitioner missed the deadline.  See Dodd v. United States, 545 U.S. 353, 358–59 (2005) ("Thus, if this Court decides a case recognizing a new right, a federal prisoner seeking to assert that right will have one year from this Court's decision within which to file his § 2255 motion.").

Petitioner concedes that he moved to vacate his sentence after § 2255's deadline.  But he asks the Court to salvage his motion under the equitable tolling doctrine because of prison lockdowns during the pertinent one-year period.  According to documents attached to his petition, the prison locked down for security concerns starting on November 16, 2019.[2]  Although the attached documents make it unclear whether or when the prison reopened for a period in December and January, another memorandum shows the prison threatened restrictions in certain housing units if it found inmates under the

---

[2] In his attached documents, Petitioner included an email he sent to an associate warden about his inability to obtain a textbook he had ordered from the mail room.  In that email, he lists the lockdowns as starting on October 23rd.  But the prison memoranda in his documents show the earliest lockdown started on November 16th.  This date dispute does not matter, though, because even if we recognized the lockdowns as starting on October 23rd, those additional few weeks would not materially affect our analysis.

2

influence of illicit substances on February 20, 2020. Petitioner claims during this time a lockdown occurred that "lasted over a month," but provides no support showing his unit experienced such restrictions or a lockdown.

Petitioner's prison locked down on April 1st after implementing some initial COVID-19 "protective measures" on March 13th. During these lockdowns, prisoners had limited time outside their cells and no access to the law library unless they had an "imminent court deadline." The prison started "modified operations" on May 18th, allowing prisoners to leave their cell for short periods of time and enjoy some "fresh air and sunlight" outside. But after some inmates apparently failed to social distance, the prison required inmates to "remain in their cells" from May 29th to "at a minimum June 2nd, 2020." Petitioner's attached memoranda do not make clear when the prison allowed inmates to leave their cells again until the next month.

In early July, a couple of inmates tested positive for COVID-19, so the prison again limited time outside of cells to "showers only until further notice." A few days later, the prison clarified that showering would only occur three days a week and prisoners could not leave their cells otherwise. This schedule seemingly remained in place until before September 11th.[3] On that day, the prison issued a memorandum letting prisoners know it would "continue to operate on modified operations due to COVID-19."

---

[3] A memorandum from the prison dated August 25, 2020, announces the institution would "be secured for staff and inmate safety" to prepare for a hurricane expected to hit the area in the next day. This memorandum suggests the prison eased some of its restrictions because it returned to stricter operations, but we cannot be sure because Petitioner provided no documentation of prison operations between July 17th and August 25th.

This memorandum mentions access to the law library, but Petitioner claims the prison only allowed them access to the law library once, restricting access again after a fight broke out between inmates. The prison locked down again—this time for security concerns—on October 7th and remained locked down until at least the 23rd of that month. To be sure, the record is unclear as to the exact dates Petitioner could not access the law library or leave his cell. But from what he has provided, we gather that Petitioner's prison locked down no later than November 16, 2019, and remained in intermittent lockdowns until well past his June 25, 2020 deadline to timely move for § 2255 relief.

## II.

Petitioner asks the Court to grant him a COA, find his motion not time barred under the equitable tolling doctrine, and remand for resentencing considering Davis.

To receive a COA, Petitioner must make a "substantial showing of the denial of a constitutional right." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (quoting 28 U.S.C. § 2253(c)(2)). This generally requires a "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quotation omitted).

Petitioner's entitlement to a COA depends on the merits of his equitable tolling argument because he moved for § 2255 relief beyond the statutory deadline. We can equitably toll § 2255's one-year limitation period. See Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir. 2008) (dealing with a § 2254 motion). But a court should not equitably

4

toll when doing so would "thwart the intention of Congress." Burger v. Scott, 317 F.3d 1133, 1141 (10th Cir. 2003).

To equitably toll his time, Petitioner must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). And he must establish these elements with "specific facts." Yang, 525 F.3d at 928 (quoting Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008)); see also Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998) ("Mr. Miller has provided no specificity regarding the alleged lack of access and the steps he took to diligently pursue his federal claims."). That is why not every prison lockdown or other limitation on access to prison law libraries or legal resources entitles a petitioner to equitable tolling—because the petitioner must still allege facts about how the lockdown or limited access prevented him from timely moving for relief.[4] See Forth v. Martinez, No. CIV 20-0832, 2021 WL 2682826, at *7–8 (D.N.M. June 30, 2021) (listing cases in which we denied equitable tolling for lockdowns or inadequate law library access).

Equitable tolling requires proof of diligence because "insufficient access to relevant law . . . is not enough." United States v. Gabaldon, 522 F.3d 1121, 1124 (10th Cir. 2008) (alteration in original) (quoting Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000)). "The inmate therefore must go one step further" by "attempting to pursue his claims absent library access." United States v. Oakes, 445 F. App'x 88, 94 (10th Cir.

---

[4] Nor does AEDPA's one-year limitations period guarantee petitioners "365 days, free of any impediment to filing caused by an extraordinary circumstance" without displaying the requisite diligence. See Smith v. Davis, 953 F.3d 582, 591–92 (9th Cir. 2020) (en banc).

2011) (unpublished) (first quoting Lewis v. Casey, 518 U.S. 343, 351 (1996)).  An inability to access legal materials can also merit equitable tolling, but Petitioner would still have to show the requisite diligence, such as by showing he made "multiple requests that his documents be returned before the deadline."  Id. (quoting Gabaldon, 522 F.3d at 1126–27).

To establish the second element, "the circumstances that caused a litigant's delay [need be] both extraordinary *and* beyond its control."  Menominee Indian Tribe v. United States, 577 U.S. 250, 257 (2016).  Thus, "equitable tolling is appropriate 'in rare and exceptional circumstances,' . . . such as when a prisoner is actually innocent, when uncontrollable circumstances prevent the prisoner from timely filing, or when the prisoner actively pursued judicial remedies but filed a defective pleading during the statutory period."  Gifford v. Everett, 28 F. App'x 748, 751 (10th Cir. 2001) (unpublished) (first quoting and then citing Gibson, 232 F.3d at 808).  "[P]etitioner should not be faulted, however, for failing to file early or to take other extraordinary precautions early in the limitations period against what are, by definition, rare and exceptional circumstances that occur later in that period."  Gabaldon, 522 F.3d at 1126 (quoting Valverde v. Stinson, 224 F.3d 129, 136 (2d Cir. 2000)).

We recently addressed whether the COVID-19 pandemic could warrant equitable tolling after a pro se prisoner untimely moved for § 2254 relief.  See Pena-Gonzales v. State, No. 21-3174, 2022 WL 214747, at *1 (10th Cir. Jan. 25, 2022) (unpublished).  We determined that "even if [lockdowns caused by COVID-19, riots, and prison killings] qualify as extraordinary, [the petitioner] allege[d] no 'specific facts' to show 'the steps he

6

took to diligently pursue his federal claims' while those circumstances existed." Id. (quoting Yang, 525 F.3d at 928, 930).  Thus, "reasonable jurists could not debate the district court's decision to reject equitable tolling[,]" and we declined his COA request. Id. at *1–2.

Likewise, in Donald v. Pruitt, we agreed with the district court's conclusion not to equitably toll the prisoner's time after he untimely moved for § 2254 relief because he "ha[d]n't shown that he was pursuing his rights diligently throughout the one-year window, including before the COVID-19 restrictions went into place."  853 F. App'x 230, 234 (10th Cir. 2021) (unpublished).  Nor did the prisoner's inability to meet with another inmate who could help him prepare his legal documents justify equitable tolling; "prisoners do not have an 'abstract, freestanding right to a law library or legal assistance.'"  Id. (quoting Garcia v. Hatch, 343 F. App'x 316, 318 (10th Cir. 2009) (unpublished)); see also Strickland v. Crow, No. 21-6085, 2022 WL 245521, at *4 (10th Cir. Jan. 27, 2022) (unpublished) (denying petitioner's request for equitable tolling (and thus for a COA) even though his access to the law library was limited due to COVID-19 restrictions because "he ha[d] not shown how his limited access 'caused his delay in filing'" (quoting Marsh v. Soares, 233 F.3d 1217, 1221 (10th Cir. 2003))).  We therefore denied the prisoner's request for a COA in Donald, too.  853 F. App'x at 234.

Pena-Gonzales, Donald, and Strickland reflect a theme throughout most cases addressing equitable tolling in the wake of the COVID-19 pandemic.  As one district court put it: "The bottom line is that the COVID-19 pandemic does not automatically warrant equitable tolling for any movant who seeks it on that basis.  The movant must

establish that he was pursuing his rights diligently and that the COVID-19 pandemic specifically prevented him from filing his motion." Howard v. United States, No. 4:20-CV-1632, 2021 WL 409841, at *3 (E.D. Mo. Feb. 5, 2021) (citing Pace, 544 U.S at 418; United States v. Henry, No. 2:17-CR-180, 2020 WL 7332657, at *4 (W.D. Pa. Dec. 14, 2020)).

## III.

Petitioner submitted ten pages of documents he argues conveys his diligence in pursuing § 2255 relief despite prison lockdowns. Those documents show that Petitioner enrolled in an online legal education course to, in his words, "pursue his constitutional claims through relevant education and exercises." Cf. Gabaldon, 522 F.3d at 1126 (prisoner made "the effort to research his claims thoroughly and set forth his arguments in as compelling a manner as possible"). He also ordered legal materials, including a legal textbook, to the prison that he never received. Petitioner emailed the prison twice—on October 8th and again on December 9th, 2019—about receiving his textbook. Like the prisoner in Gabaldon, Petitioner "demonstrated due diligence in attempting to retrieve his seized legal materials before his filing deadline." Id. at 1126–27. On the other hand, Petitioner's one-year clock started on June 24, 2019; so, as the district court noted, Petitioner needed to—but did not—explain why he could not diligently pursue his rights and faced extraordinary circumstances from June 25th to November 16th, 2019.[5]

---

[5] Petitioner claims he did not learn about Davis until September 14th when he received a newsletter from a lawyer who provides caselaw updates to prisoners. Thus, he only had about eight weeks from the time he learned of Davis to move to vacate his sentence because the lockdowns started in mid-November. Petitioner's calculation of his

The second Pace element, extraordinary circumstances, also weighs against his petition in this case. Petitioner's attached documents do not paint a coherent picture of his prison's timeline of lockdowns. The caselaw establishes that lockdowns alone, even ones due to COVID-19, do not warrant equitable tolling without Petitioner proving he pursued his rights until the lockdowns prevented him from doing so. See Donald, 853 F. App'x at 234; Pena-Gonzales, 2022 WL 214747, at *1. As it stands, we cannot tell how much the lockdowns interfered with Petitioner's ability to timely move for § 2255 relief.

Petitioner's request for a COA leaves us with some showing of diligence and uncertain circumstances in the midst of the start of the COVID-19 pandemic. Based on his petition, no "reasonable jurist[] could debate whether . . . the petition should have been resolved in a different manner." Slack, 529 U.S. at 484. First, and most importantly, Petitioner demonstrated no diligence for the first almost five months of his limitations period and thus he "hasn't shown that he was pursuing his rights diligently *throughout* the one-year window, including before the COVID-19 restrictions went into place." Donald, 853 F. App'x at 234 (emphasis added); see also Smith v. Davis, 953

---

window to timely move for relief poses several problems. For one, the Supreme Court specifically rejected the idea that the one-year period starts when the decision becomes retroactive. See Dodd, 545 U.S. at 357–58 (rejecting Dodd's suggestion that the one-year limitations period starts to run once a court has made the right retroactively applicable to cases on collateral review because it did not "square with the only natural reading of [§ 2255's] text"). In other words, the one-year limitations period does not start to run when a prisoner learns of the new rule or when the right becomes retroactive on collateral review; it starts to run when the Supreme Court hands down the decision that recognizes a new constitutional right. See id. at 358–59. For another, and maybe most importantly, "it is well established that 'ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'" Marsh, 223 F.3d at 1220 (quoting Fisher v. Johnson, 174 F.3d 710, 714 (5th Cir. 1999)).

F.3d 582, 598–99 (9th Cir. 2020) (en banc) (explaining that to prove the requisite diligence, the petitioner "must show that he has been reasonably diligent in pursuing his rights *not only* while an impediment to filing caused by an extraordinary circumstance existed, but *before* and after as well" (emphasis added)).  And while his documents make it unclear when he had no (or limited) access to the law library during prison lockdowns, "prisoners do not have an abstract, freestanding right to a law library," so that fact does not necessarily call for equitable tolling, either.  Donald, 853 F. App'x at 234 (quotation omitted).

Courts should only afford equitable tolling in "rare and exceptional circumstances," which Petitioner did not exhibit here.  Gibson, 232 F.3d at 808 (citation omitted).  "Therefore, [Petitioner] hasn't made the requisite showing that he is due an exception to the statutory bar."  Donald, 853 F. App'x at 234.

IV.

We deny Petitioner's request for a COA because he has failed to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

10

Because we deny the COA, we need not reach the merits of his petition.[6]

Entered for the Court

Joel M. Carson III
Circuit Judge

---

[6] Petitioner also complains that the district court "plainly erred" in not allowing him to reply with "supporting documents" to prove his equitable tolling argument. But Rule 5(d) of the Rules Governing Section 2255 Proceedings only allows the petitioner to submit a reply "to the respondent's answer or other pleading," neither of which were filed. Rule 5(d), Rules Governing Section 2255 Proceedings for the United States District Courts; see also United States v. Hill, 336 F. App'x 832, 834 (10th Cir. 2009) (unpublished) (relying on the Rules but still finding the district court's failure to follow the Rules constituted harmless error because the petitioner could not succeed on his underlying ineffective assistance of counsel claim). The district court did originally order the government to respond, but later struck that order and ruled on Petitioner's motion. See Rule 5(a), Rules Governing Section 2255 Proceedings for the United States District Courts. Thus, the district court did not plainly err in not allowing Petitioner to reply to a response that the government never filed.